(137 So. 27)

## LATTER v. SCHWARZ.

I Div. 631.

Supreme Court of Alabama.

Oct. 15, 1931.

Outlaw, Kilborn & Seale, of Mobile, for appellant.

Smith & Johnston, of Mobile, for appellee.

**THOMAS, J.**

The case went to the jury upon the common counts 1 and 3, and No. 7, a special count. The plea was that of the general issue. The verdict was for the plaintiff for $5,000. The common counts claimed $5,000; and the special count was for $12,500. The jury were properly instructed as to the issues of fact presented and the verdict warranted under the evidence.

The demurrer to count 7 was overruled, and several assignments of error are predicated thereon and upon the ruling and instructions of the court touching the special count.

If the amount of the verdict or the instruction of the court clearly showed that the jury did not pass upon or find for plaintiff under the count declaring on an express contract, and if error intervened as to it, the same was without injury. The decision in Kellar v. Jones & Weeden, 196 Ala. 417, 72 So. 89, contains the declaration that, where the broker's verdict was rested upon the common count, any erroneous ruling as to a count declaring on a special written contract was without injury. In Finney v. Newson, 203 Ala. 191, 192, 82 So. 441, 442, the court declared: "Since the plaintiff's recovery, if he was so entitled, may be referred to the common counts, either because he had fully performed the contract or on a quantum meruit, the action of the court in overruling the defendant's demurrers to counts 5 and 6 was in any event without prejudice to defendant. Kellar v. Jones, 196 Ala. 417, 420, 72 So. 89; Barnes v. Marshall, 193 Ala. 94, 69 So. 436."—Ex parte E. C. Payne Lumber Co., 203 Ala. 668, 85 So. 9; Id., 205 Ala. 259, 87 So. 876.

The evidence showed that the plaintiff was entitled to recover on the common count; that is, the verdict and evidence, though in conflict, were such as that the former should be referred to the common counts. This was within the rule of the last-cited authorities, and the several rulings of the trial court as to the special count rested upon the express contract may not be considered.

Schwarz testified that, in the first instance, he called Latter's attention to the property, discussed with him its sale and purchase; that he agreed to buy at $200,000, less a commission of 5 per cent., and said he would buy at the sum above indicated, less the commission which would be divided between him and Schwarz; or would buy for $200,000 or less, and divide the difference between that sum and the purchase price (or any commis-

sion made) with plaintiff; that, pursuant to defendant's letter of instruction, plaintiff had Webster to meet Latter in Mobile, and the price named for the sale at the first meeting was $300,000; that Webster later told Schwarz that he would sell the property at a reduced amount—"for $200,000.00"—and pay a commission of 5 per cent.

Webster testified that it was plaintiff who introduced him to the purchaser; that Schwarz negotiated with him thereafter as to the sale, and represented that he was Latter's agent or was acting for him in negotiating for the purchase. Negotiations began in March, 1927, for lease from Webster. Schwarz testified that on August 7, 1928, Latter wrote Schwarz to get the lowest selling price, and indicated he might purchase on his own account. The letter read:

"Mr. Sam L. Schwarz, Mobile, Alabama.

"Dear Sam: Some time ago you talked to me about the property owned by Mr. Webster on Dauphin Street.

"I would like to have you see Webster now and find out the very lowest price he will take, as I will probably do something if it is cheap enough. Also let me know on what terms you think he will sell, and further the exact rentals of the property.

"Yours very truly,
"[Signed] Harry Latter."

Schwarz testified that two days later he wrote Latter as follows:

"August 9th, 1928.
"Mr. Harry Latter, New Orleans, La.

"Dear Sir: Enclosed please find memorandum in reference to the Webster property. Mr. Webster will pay us a commission of five per cent in the event a sale is made. The price is $200,000.00.

"Yours truly,
"SLS/W."

The inclosed memorandum was then introduced, which reads:

"Webster Theatre

"Sale price $200,000.00 will pay us 5% commission.

"Terms: One-fourth cash, balance $15,000.-00 a year for 10 years, interest 6% payable semi-annually.

"Leased until 1930 with privilege seven years renewal.

"The lease until November, 1930, is for the theatre and entrances on Dauphin St., Conception St., and Conti St., only for $8500.00 per year.

"On November 1, 1930, the Keller lease expires on Dauphin St. store also Conception St. barber shop and hotel.

"Keller has subleased the hotel on Conception St. for $150.00 a month and barber shop for $125.00 per month until November, 1930.

"The seven year privilege is for $1100.00 per month, and includes the Keller store on Dauphin St., the theatre, all the Conception St. property including hotel and barber shop and entrance on Conti St. This will put the rentals at $16,500.00 per year after November, 1930.

"August 9, 1928."

Witness Schwarz continuing, testified: "I did not receive any answer from Mr. Latter to this letter."

The defendant denied the receipt thereof.

The record further recites:

"I wrote him the same letter on August 14th, and put it in the United States mail and mailed it to him with postage prepaid.

"Plaintiff then introduced in evidence a carbon copy of the letter, testifying that he has not the original. The letter so introduced is dated August 14th, 1928, and is as follows:

"'August 14th, 1928.
"'Mr. Harry Latter, New Orleans, La.

"'Dear Sir: Enclosed please find memorandum in reference to the Webster property. Mr. Webster will pay us a commission of five per cent in the event a sale is made. The price is $200,000.00.

"'Yours truly,
"'SLS/S.'

"The witness, continuing, testified:

"After I sent him these letters I think I got a telegram from Mr. Latter about that property. I received this telegram from Mr. Latter.

"Plaintiff then introduced in evidence the telegram, same being dated August 19th, 1927, and reading as follows:

"'Western Union
"'Aug. 19.
"'New York N. Y.
"'Sam L. Schwartz
"'Mobile, Ala.

"'My people are interested in buying but cannot do anything for about 60 days Stop Suggest you to see Webster and urge him not to do anything Will see parties again upon return arrival New York Regards
"'Harry Latter.'"

Then Schwarz testified he sent Latter a copy of the previous letter and memorandum information, as follows (this was after Latter's letter of date of August 22, 1928, declining to further "deal" with Schwarz for failure to give information requested):

"Mr. Harry Latter, New Orleans, La.

"Dear Sir: In reply to your letter of August 22nd in reference to the Webster property, wish to inclose you a copy of the letter written you on August 9th.

"Yours very truly,
"SLS/S [Signed] Sam L. Schwarz"

The following indorsement in pencil appeared on the above letter:

"Mr. Latter, Mr. Schwarz's letter of Aug. 9 was evidently never received.

"C. S."

And, according to plaintiff's testimony, Latter replied:

"Latter & Blum

"New Orleans, August 25th, 1928.
"Mr. Sam. L. Schwarz, Mobile, Alabama.

"Dear Sam: Acknowledging receipt of your letter of August 23rd, enclosing copy of letter written on August 9th, relative to the Webster property, we have never received original to the above.
"Yours very truly,
"HL:NLK. [Signed] Harry Latter."

Plaintiff then testified:

"Mr. Latter acknowledged receipt of that data from me on August 25th, and the letter which has just been adduced in evidence constitutes his acknowledgment.

"Mr. Latter said nothing further to me about going ahead with the purchase that I had arranged for him. It was after he got this data from me to the effect that Webster would sell the property for $200,000.00, that Latter went ahead and purchased the property.

"I never said to Mr. Webster in any of my conversations with him that I was representing Mr. Webster. I told him I was representing Mr. Latter, and I told him Mr. Latter was interested in the property, and brought Latter and Webster together to try to make a deal, and introduced them."

And later the property was purchased by defendant through another agent in Mobile for $175,000, which the evidence shows was the consummated purchase price.

It is plaintiff's contention that he fully performed his part of the contract in getting Webster's agreement to sell for $200,000 and commission, and that he is entitled to one-half of any commission Latter may make by selling to a third party, or to one-half that Latter might save if he himself purchased the property for a sum less than $200,000. The sale was for $175,000, and under count 7 plaintiff claimed $12,500.

This phase of the evidence was disputed by the defendant, who testified that he only agreed to divide the commission with Schwarz in the event of a lease or sale to a third party and there was a commission earned; said further that he had no express contract covering the contingency of his purchase of the property.

It is plaintiff's further contention that under Latter's evidence he was responsible for the reasonable value of services plaintiff rendered at the request of defendant, and which services were of value to defendant when availed of, acted on, and as an efficient cause, or as accepted by defendant in bringing about the sale and purchase; that defendant made it impossible to sell to a third person by the purchase of the property after plaintiff had so acted in the premises. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Catanzano v. Jackson, 198 Ala. 302, 73 So. 510; Schwarz v. Lou-Ala Investment Co., 23 Ala. App. 498, 127 So. 786; Hale v. Brown, 211 Ala. 106, 99 So. 645; Gulf Trading Co. v. Radcliff, 216 Ala. 645, 114 So. 308.

The usual commission as to the value of the services rendered in such matter is stated by Latter to be five per cent. of real estate situated in town or city.

The contract for the sale has been taken as evidence or a guide for the jury in arriving at a reasonable compensation in such matter in Smith v. Sharpe, 162 Ala. 433, 439, 50 So. 381, 136 Am. St. Rep. 52.

■ The undisputed evidence was, after enlisting the services of Schwarz, defendant, through another, offered and paid $175,000 for the property, and purchased same; that the usual real estate commission was 5 per cent., where the property was located in the city. The jury were at liberty to accept or reject the evidence given by Schwarz as to the terms of the special contract, and to substitute their own judgment as to the value of the reasonable services rendered by plaintiff to defendant. This they did under the common counts and under the evidence and issues submitted to them by the court. The charge was, among other things, as follows: "Now there is an absolute conflict in the testimony in this case as to what the agreement was, if any there was, between the plaintiff and the defendant as to this transaction. If, as a matter of fact, the evidence showed to your reasonable satisfaction that the purchase by the defendant in this case of the Bijou property was not brought about through the agency of the plaintiff or that the plaintiff was instrumental in bringing about in some substantial way this sale, then the plaintiff would not be entitled to recover anything, but the law is on the other hand, if as a matter of fact, you should find from the evidence in this case that the plaintiff in this case was the effecting agent in effecting or bringing about this sale, then he would be entitled to a reasonable compensation for his services, if you should find it was done at the request of the defendant or if you should find it has been established that he had an agreement that was in force and effect at the time of the transaction or transfer of the property to the defendant, he would be entitled to a sum equal to one half the difference between $200,000.00 and what he actually bought it at."

The ruling of the court on the question as to particulars and facts of the initiation of another suit called for irrelevant, personal matters, and was rejected for that reason by the trial court. The inquiry should have been confined or limited to bias, prejudice, or feeling of the witness to the defendant—as it affected his testimony as a witness.

We find no reversible error, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.