179 So. 541

**STATE v. PULLMAN–STANDARD CAR MFG. CO.**

**6 Div. 192.**

Supreme Court of Alabama.

Jan. 13, 1938.

Rehearing Denied Feb. 24, 1938.

Further Rehearing Denied March 17, 1938.

A. A. Carmichael, Atty. Gen., Francis M. Kohn and Walter J. Knabe, Asst. Attys. Gen., and Erle Pettus and Erle Pettus, Jr., Special Assistants, both of Birmingham, for appellant.

Cabaniss & Johnston and Jos. F. Johnston, all of Birmingham, for appellee.

496

FOSTER, Justice.

This proceeding is an appeal to the circuit court by Pullman-Standard Car Manufacturing Company, a Delaware corporation, hereafter referred to as taxpayer, from an assessment made by the state tax commission of Alabama, fixing the franchise tax of such company, and it contended that in fixing the amount of capital which it employed in this state, as a basis for the franchise tax for 1936, there was improperly included the amount invested in the erection and equipment of a manufacturing plant by Pullman Car & Manufacturing Corporation, an Alabama corporation. The circuit court held with that contention, and the state appeals here.

To determine the question thus presented, it is necessary to state the facts showing the connection between the two companies. A Delaware corporation called "The Pullman Incorporated" is a holding company, whose principal office and business situs is in Chicago, Ill. Pullman Car & Manufacturing Corporation is an Alabama corporation, with a capital stock of $2,000, all owned by "The Pullman Incorporated." It is not an operating company, but it erected the plant and facilities being operated by the taxpayer, on whom the franchise tax was imposed. The plant and facilities are carried on the books of the Alabama company at a valuation of $2,563,245.41, on which, together with operating capital, the franchise tax of the Delaware operating company (the taxpayer) was calculated in making the assessment by the state tax commission. The circuit court reversed that ruling and made an assessment on the basis of the amount of operating capital ascertained to have been provided by the operating company, which it employed in conducting the business in the plant under lease from the Alabama corporation. The Alabama corporation borrowed on its note, unsecured, from the holding company, approximately $3,000,000, with which it erected and equipped the plant and made a lease of it to this taxpayer, which is a Delaware corporation, all of whose stock is owned by The Pullman Incorporated. So that both companies are affiliated and jointly owned by the same holding company.

The construction of the plant began in 1929, and when finished was immediately leased to the taxpayer, which has operated it since then. The lease was renewed in 1934, under which it was operating in 1936, the year in which the franchise tax is here sought to be collected. Under the terms of that lease, the taxpayer agreed to and has been paying the Alabama company on three bases of calculation (a), (b), and (c).

(a) There is payable monthly a sum equal to one-half of 1 per cent. of the value of the leased property, after deducting depreciation and the value of the property removed or damaged and not replaced (not intending here to be exact in statement of details).

(b) Also monthly a sum adequate to take care of depreciation and obsolescence.

(c) And at the end of the year an amount sufficient to reimburse the Alabama company for sums paid by it during such year for all taxes and assessments, local, state, and national.

The amount so calculated had been approximately $300,000 for several years prior to 1936, here in question. These amounts were paid in cash by the taxpayer to the Alabama company as they accrued. That was the only income the Alabama company had, and practically all of it was paid by it to the holding company on account of its indebtedness to that company.

The taxpayer operates eleven such plants outside of Alabama making twelve in all. Of them, it leases one other plant than that in Alabama, making two that it leases, and ten that it owns outright. The officers and directors of the holding company and the taxpayer are different persons. But the directors and principal officers of the Alabama company and of the taxpayer are the same. The books of both companies are kept under the supervision of the same comptroller, in the same office in Chicago, with that of the holding company. The amount paid by the taxpayer to the Alabama company is set up and carried on the books of the former as an operating expense. There is no value set up for the leasehold, because it is said that the operations were conducted at a loss, and the lease was of no value. This loss would not have occurred in 1935 but for the amount paid for the rent herein referred to.

The assessment here in question is under authority of an act of the Legislature, Acts 1935, p. 387, and section 232 of the Constitution of Alabama of 1901. They fix the annual franchise tax at $2 on each $1,000 of the actual amount of capital employed in this state. Section 318.

Section 229 of the Constitution related to the franchise tax on domestic corporations, and must be calculated "in proportion to the amount of capital stock" of such corporation. This distinction has been approved as a legitimate basis for classification, and the theory as applied to foreign corporations has been held to be just. Ellis v. Handley Mfg. Co., 214 Ala. 539, 108 So. 343; Louisville & Nashville R. Co. v. State, 201 Ala. 317, 78 So. 93.

The tax in question is not a property tax, but in the nature of an excise "for the privilege of exercising corporate functions, and measured by the capital employed in Alabama." State of Alabama v. Southern Natural Gas Corporation, 233 Ala. 81, 170 So. 178, 183; Alabama v. Southern Natural Gas Corp., 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970.

The questions we have are, first, whether the capital so employed includes values owned by others but used by the taxpayer, to the extent not of the amount of capital owned by the taxpayer used in that connection, but of the amount of capital of the owner of the property and invested by such owner; and, second, whether the capital invested in the erection and equipment of the plant used by the taxpayer under a formal lease was not in reality that of the taxpayer within the meaning of the laws now under consideration.

Property owned by some other person.

With respect to the first question, we think that in principle the Constitution and Legislature meant to refer to capital owned by the foreign corporation and employed by it in Alabama. We know that there are many foreign corporations doing business in Alabama, and using rented property, such as hotel operating companies and mercantile companies, as well as other forms of business enterprise. All must be treated alike in this connection. It was with this knowledge and this intent that the law was made.

Whatever may have been their power, it seems clear to us that the lawmakers did not intend to make such companies, though organized in another state,

pay a franchise tax based on the full value, not on the lease value, of hotels or storehouses, respectively, which they may lease and operate, but are owned by some other person, and in whose purchase or erection they have none of their funds invested or employed, and in which they made no capital outlay.

■ Obviously an ad valorem tax, though levied on capital employed in such a business, could not extend to the value of such equipment so leased, except to the extent of its funds invested in the lease. Harrison Naval Stores v. Adams, 104 Miss. 381, 61 So. 417.

■ We think that the lawmakers meant that the difference between the basis of the calculation between domestic and foreign corporations was that as to the former it should be computed on all its capital stock, and as to the latter it should be on so much of its capital or other funds as is used in operating its business in Alabama.

We do not seem to have a case in which this question was involved, though we have considered and treated many other aspects of those provisions. In addition to the cases above cited, see State v. National Cash Credit Association, 224 Ala. 629, 141 So. 541; Investors' Syndicate v. State, 227 Ala. 216, 149 So. 83.

### The fiction of corporate set up as a basis for consideration.

■ The second question presented is whether or not the funds invested in the plant operated by the taxpayer were not so closely related in ownership to it that they should be treated as being so owned, and, therefore, that they were for all practical purposes funds of the taxpayer so employed. The fiction of corporate ownership cannot ordinarily be used as a means of evading a law which should have application to the situation, if it clearly appears that such is the status.

In the case of United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760, the court was dealing with an Act of Congress prohibiting a railway company from transporting in interstate commerce any article mined or produced by it, etc. A holding company owned all the stock of the railroad company, and all the stock of the coal company, combining a community of interest in the product of the coal company, and it was held that

this brought the ownership in such close relation to the railroad as to come within the prohibition of the statute. The companies, including the holding company, had the same officers and directors, resulting in the abdication of all independent corporate action, involving a surrender to the holding company of the entire conduct of their affairs, and all profits found their way to the treasury of the holding company, and such was intended by the set up.

The same question came before that court again in United States v. Elgin, Joliet & E. R. Co., 298 U.S. 492, 56 S.Ct. 841, 80 L.Ed. 1300, involving the operations of a railway and other companies which were subsidiaries of the United States Steel Corporation, as the holding company. The Reading Case, supra, was relied on. The court held there were essential differences: (1) The corporate set up had existed since 1901, and their operations had been under the constant supervision of the Interstate Commerce Commission. (2) The directors of the holding company were different from those of the subsidiaries; none of them on such boards. (3) The United States Supreme Court had held that its set up did not violate the Anti-trust Act. (4) The holding company was not shown to exercise controlling influence over the subsidiaries in its operations. There was dissent by three justices holding that those distinctions should not differentiate the cases.

■ While those decisions are not legally controlling on us, because they are interpreting a federal statute, and we are interpreting a state statute, but they furnish authority which we respect to the point where we will follow them when we are convinced that they are applicable. We do not think they are applicable to this situation for the reasons which we will discuss.

We may concede for the purposes of this case that the holding company could have caused the set up to assume any form which its officers thought was best for their financial interest, and that the set up adopted was largely planned to evade the larger part of the corporate franchise tax here involved. They might have made the Alabama corporation the operating company as well as the owner of the plant, and not have used a foreign corporation for that purpose. In that event, the corporate franchise tax would have

been on the capital stock of that corporation fixed in their discretion. Instead of doing that, they decided that the same result could be accomplished by setting up a small Alabama company to own the plant, subject to large ad valorem tax but small franchise tax, and send into Alabama its foreign corporation to operate but with relatively small operating capital. The law allowed them to exercise their judgment as to what corporate set up would be used, and said to them, "If you use a small Alabama corporation to own the plant, we will tax the plant, but you may fix your capital stock set up as you choose and we will tax your corporate franchise in proportion to that set up."

If the court now says that "though you have planned your structure as so authorized by law, and with a result which the letter of the law says will follow, we will hold you to a different result, because in fixing your structure you have done ·it so as to incur the least tax liability which the law authorizes, and we will look at your purpose, and instead of enforcing the tax law as it is written, we will hold you to pay the highest tax which could have accrued had your structure been different."

█ The statutes interpreted by the United States Supreme Court were not tax statutes. They did not relate to a situation required to be strictly construed against the government, as tax statutes are. State v. Seals Piano Co., 209 Ala. 93, 95 So. 451; State v. Roden Coal Co., 197 Ala. 407, 73 So. 5.

But the tax laws of Alabama opened the door to a situation which when entered leads to a certain declared tax condition. We held in State v. National Cash Credit Association, supra, that a foreign holding company is not liable for the franchise tax on account of the capital stock of its subsidiary, though the holding company may have furnished to its subsidiary all its capital assets, by owning all its capital stock.

█ It would be as much in the province of the court to set aside that corporate structure for franchise tax purposes as to do so in this case. We do not think it should be done in either situation.

### Accounts receivable.

In the circuit court the amount of franchise tax was figured on the basis of operating capital aggregating $116,740.23, made up of items of cash, accounts and notes receivable, inventories, and deferred charges. Those are the figures used by the tax commission, except that in addition to them it included $2,563,245.41 as the value of the leased plant.

It is also noted that a substantial item considered in the calculation was for accounts receivable. It is claimed on cross-assignment that this item should not have been included, because it is an intangible and has a situs for taxation at the domicile of the corporate owner.

The taxpayer is a Delaware corporation, as we have said, but apparently has acquired a "business situs," in Chicago, where its intangibles are subject to ad valorem taxation. Whether it has also acquired a business situs in Alabama, in so far as its Alabama operations are concerned, so that Alabama may impose ad valorem taxation on such of its intangibles as were created in Alabama, is not necessary for our consideration. The principles which control the inquiry in that respect have been declared by United States Supreme Court. Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143; First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061. Both of those cases dealt with a property tax on intangibles at the business situs of the corporation in.a state different from that in which the item arose. It was held to be taxable in the state in which such business situs existed. It was also suggested that shares of stock held and owned in a foreign corporation might possibly be subject to ad valorem taxation in both states; that of the business situs of the owner, and that in which such foreign corporation was incorporated.

But whether accounts receivable which arose out of the business conducted in Alabama are "integral parts" of the business so conducted by the taxpayer in Alabama as to be subject to local property taxes within the principles declared in those cases, the question here is controlled by different principles.

All contracts are made in Chicago for taxpayer; whence bills are sent to purchasers of the product manufactured in Alabama, where also in Chicago are kept the record; and where payments are made, or in New York.

But the tax we are dealing with is not a property tax but an excise for the privilege of exercising its corporate functions in Alabama, and may be measured by the extent of its operations in Alabama, upon the basis of its employed capital, regardless of the nature of the business in which it is employed. Southern Natural Gas Corporation v. Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970. To the extent that such capital is represented by bills receivable which arose from its Alabama operations, it is capital so employed in Alabama, regardless of the domicile or business situs of the corporate owner. State v. National Cash Credit Association, supra.

The items mentioned by the state tax commission and approved by the circuit court are made the basis of an estimate, we assume, of the amount of operating capital employed by the taxpayer in conducting its business in Alabama. Those items are probably changing from day to day, and the amount of each is supposed to be a fair average, and they may fairly be held to be the amount of operating capital so far as they represent it.

The lease as affecting employed capital.

The circuit court held that the lease was without value as such, because the business was conducted at a loss for the year 1935, and did not include any amount as operating capital so employed. The tax commission included nothing for the lease consistent with its theory that the full value of the plant should be included.

The taxpayer contends that the amount paid for rent was an operating expense, and not a part of its operating capital, since it was paid out of current receipts resulting from operations. In 1935, taxpayer's business in Alabama produced the gross sum of $600,938.53. Of course, out of this its operating expenses were paid including the rent of approximately $300,000. In that year the loss from operations was $256,693.42, which so resulted after the payment of the rent which found its way into the treasury of the holding company. Without the payment of that rent, there would have been a small operating profit, approximately $40,000.

The state authorities may not be bound by the rent agreement executed between the two companies having the same officers. But upon the basis of the figures so represented, there appears a situation which manifests the employment of capital in that connection.

"Capital actually employed cannot be limited to the fund or property originally contributed, invested, as a financial basis for the business to be prosecuted." State v. Seals Piano Co., 209 Ala. 93, 95 So. 451, 452.

But the same amount of operating capital may be used from month to month in providing the set up from which income is derived to pay the monthly expenses and replenish the stock of stores. The total amount so used during the year would not fairly and justly represent the capital employed. Monthly pay rolls also take money. If the rent payable is of the same nature as other operating expenses, such as pay rolls, it should have the same sort of treatment in determining the amount of capital employed. If the enterprise pays a sum in the nature of the purchase of a long-term lease, the amount so paid may be assimilated to a purchase of the title to property outright and represents capital employed. But the ordinary payment of monthly rent for the use of property in the conduct of business paid and treated as operating expense by the tenant ought not to be classed as the purchase of a leasehold interest as a capital investment for such use. It seems to us that it should be treated as other such expenses or as the average of the stock of stores, bills receivable, etc.—not the total amount so manifested during the current year. It does not require a capital investment so large. But the substantial amount of rent here paid indicates the necessity of having operating capital larger than would be necessary, if no such charges existed.

A reasonable sum for such purpose should be included as capital employed. Perhaps one-twelfth of the total annual rent paid should be allocated to capital so employed: the balance being included in the monthly turn over. That would be approximately $25,000. We think that amount should be added to the total found by the circuit court as capital so employed. This adds $50 to the tax as adjudged by that court.

The judgment of the circuit court is modified so that the amount of the tax for the year 1936 due to be paid by appellee is fixed at $283.46, with interest from January 1, 1937, at 6 per cent. per

annum, for which, together with the cost of this appeal, let execution issue. No judgment is rendered for the costs of the trial in the circuit court, since no judgment can be rendered against the state. Collier v. Powell, 23 Ala. 579; Constitution, § 14.

Modified and affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, Justice.

We have given careful consideration to the cases cited by the State on its contention that the court should set aside the corporate set up and assess the franchise tax against the foreign corporation on the basis of capital employed by a State corporation on whose capital stock a franchise tax is paid according to the Constitution and laws of Alabama, because they are affiliated. None of them relate to this situation. They are income tax cases, and the question goes to the beneficial ownership of the income as a basis for such tax. And as typical, it is said in Commissioner of Internal Revenue v. Eldridge, 9 Cir., 79 F.2d 629, 102 A.L.R. 500, that the separate entity of corporations is sometimes disregarded in tax cases (citing income tax cases), "but only when warranted by exceptional circumstances. Generally, in tax cases, as in other cases, a corporation and its stockholders are to be treated as separate entities." But it is there also said: "A taxpayer may resort to any legal method available to him to diminish the amount of his tax liability." And in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

That is exactly this situation. This tax payer has simply and only set itself up in conformity to the law and proposes to pay the taxes which the law says are payable when so set up. The State cannot complain when the tax payer resorts to a legal method available to him to compute his tax liability. The State is now saying to him that although you did what we said you could do with a certain result, that result is more beneficial to you than we intended. This Court cannot change the law as thus made by our Constitution and statutes.

Every corporation was created as a legal method of avoiding a personal liability of its stockholders, or to have the benefit of some other law enacted for the purpose of stimulating such a business enterprise. It seems that it is more to the discredit of the State to seek to withdraw such benefits after they have been accepted and acted upon, than to those who thus act in reliance upon their effective operation.

Again the tax payer urges on its cross-assignment of errors that the State Tax Commission was in error when it computed the amount of accounts receivable on December 31st, as a part of the capital employed by the corporation. We dealt with the question urged on the submission that they are intangibles and have no situs in Alabama for taxation. The contention is now again made that they cannot be considered as fairly representative of any amount of capital employed, because (1) it cannot be said with certainty when the business was created, so as to fix it for that tax year; and (2) that they include items of cost, which did not accrue in Alabama, such as overhead, sales expense and management.

It was not in any sense our purpose to establish as a precedent that the amount of accounts receivable at any certain time should be taken as a matter of law to represent that amount of capital employed. But the tax commission in making the assessment will be presumed to have gone into the whole question of employed capital during the year. Accounts receivable entered into the consideration of the subject, as it related to the scope of business conducted, as illustrative of the need of operating capital: not that such accounts separately considered furnish a legal standard. But furnish a circumstance along with the other items mentioned as evidence of the amount of capital which was probably used in operating the business in Alabama.

The courts are here reviewing the assessment made by the commission. It is not an assessment of certain items either as property values or as a legal method of measuring the amount of capital employed, but the items are set out as a basis of computation; upon a finding by the commission that operating capital was necessary, and when all those items are tak-

en together and considered in connection with pay rolls and other expenses, they fairly represent such amount. We hold as a matter of law that the amount invested by another company in its plant leased to the tax payer cannot be taken as representing capital employed by the tax payer. But we cannot say as to the other items included in the computation that they cannot be so considered.

The Act which authorizes this review is that approved April 21, 1936, Gen. Acts 1936, Ex.Sess., p. 172. By it on such appeal, the assessment is prima facie correct, and the burden is on the tax payer to show that the total sum of employed capital on the basis of which the tax is computed is erroneous, and wherein it is so. In other words, it must show that the tax payer did not employ that amount of capital in Alabama, and the amount which was so employed. They have not met that burden, except in respect to the value of the plant. They have offered no evidence which tends to show that they did not employ in Alabama the amount of capital on which the tax is to be computed, except as to the large sum supposed to be represented by the plant.

It must be kept steadily in mind that this tax is not upon the several items which entered into the computation. It is upon the privilege of exercising its corporate functions in Alabama, measured by the amount of its capital employed in Alabama. It did a business in Alabama for that year of over $600,000,00, in the manufacture and sale of its products, at the selling price at the plant in Alabama.

The tax payer has offered no evidence which reflects upon the finding of the commission fixing the amount of capital employed in Alabama to produce that business, except as to one item of the computation.

The tax payer also insists on this application that no sum should have been added on the basis of the amount paid as rent, and cites the fact that a cash item of $38,000.00 was included, and insists that it was sufficient for that purpose.

But there are other items of expense which need operating capital in addition to those included in the computation. We must presume that the commission gave consideration to the whole picture. We know that nothing was included for the lease because the whole value was included. So that the other items represented their estimate without the allowance of anything for the lease. There is no evidence to discredit the basis of computation in other respects. We see no reason to disturb our former opinion.

We observed in it, however, upon the authority of an old case that a judgment for costs cannot be rendered against the State. Our attention has been called to section 7221, Code, which authorizes such a judgment in civil suits in which the State is plaintiff. Whether that statute contravenes section 14, Constitution, is not necessary for us to decide. This is not such a case. This is an appeal by a tax payer from an assessment for taxes as made by the State Tax Commission under the Act of 1936, page 172. The case cited is authority at least that no such judgment is available without an act of the legislature. There is none here applicable. So that the result was correct, as we declared.

The application is overruled.

ANDERSON, C. J., GARDNER and BOULDIN, JJ., concur.