189 So. 78

## LEDLOW v. GOODYEAR TIRE & RUBBER CO. OF ALABAMA.

### 6 Div. 393.

Supreme Court of Alabama.

May 18, 1939.

Crampton Harris and D. Harry Markstein, Jr., both of Birmingham, for appellant.

Coleman, Spain, Stewart & Davies, of Birmingham, and Hood & Murphree, of Gadsden, for appellee.

FOSTER, Justice.

This is an action for an assault and battery alleged to have been committed by the agents of defendant on plaintiff.

Defendant filed a plea in abatement in substance that it is an Alabama corporation; that at the time the cause of action arose and at the time of the institution of the suit, and at all intervening times it was not doing business by agent in Jefferson County (where the suit was begun); that the matters complained of occurred in Etowah County, Alabama, where defendant is amenable to suit. Issue was joined on this plea, and it was tried with a jury. The court gave the general charge for defendant with hypothesis, resulting in a verdict and judgment for it.

The question argued in this connection relates to that of whether defendant was doing business in Jefferson County, Alabama, so as to be amenable to suit there under the provisions of section 10471, Code, in so far as that section relates to domestic corporations.

The answer to that question depends upon the relation of the defendant to another Alabama corporation named "Goodyear Tire and Rubber Company, Inc." The difference in the names of the two companies is that as to defendant, after the word "company" in its name, appear the words "of Alabama," and as to the other after the word "company" appear the letters "Inc." For convenience we will call the defendant the "manufacturing company," and the other Alabama corporation the "selling company." They are both wholly owned subsidiaries of an Ohio corporation whose name is "The Goodyear Tire and Rubber Company," and whose principal place of business is Akron, Ohio, and which we will call the "parent company."

Defendant was incorporated by filing certificate in Etowah County, Alabama, December 13, 1928, with one thousand shares authorized at $10 par value of each ($10,000), all subscribed and fully paid. The selling company was incorporated by filing certificate in Montgomery County, Alabama, March 21, 1932, with forty shares authorized at $100 par value of each ($4000) of which $1000 was subscribed and fully paid.

Defendant has a plant in Gadsden, Etowah County, Alabama, where it man-

ufactures rubber products. The parent company purchases the materials for use in the operations of defendant in Alabama, and charges the amount of their cost to it. The manufactured articles are then theoretically sold to the parent company by defendant but are shipped to the Alabama selling company for sale or as directed by it in Alabama, and some are shipped to other states and there sold. There is another selling company, also a subsidiary of the parent company, which handles all sales in states other than Alabama, and which sells some of the products of defendant manufactured at its plant in Alabama. The selling company which conducts its business in Alabama handles not only such products of defendant as are sold in Alabama, but also an undisclosed amount of such as are produced in plants outside of Alabama. But none of the Alabama produced articles are sold in Alabama, except by the Alabama selling company, which likewise sells none of such products which go out of the State. The defendant and the selling company do not have any inter company transactions as we understand the evidence, except it ships its product according to the "schedule" of the selling company in Alabama. The accounting transactions are between each such affiliate with the parent rather than between themselves.

The parent company does business in some phases throughout a large part of the world, with forty or fifty separate corporations as subsidiaries to coordinate its operations. Its general officers reside in Akron, Ohio, and belong to a group who are also the general officers of both Alabama affiliates. But each such affiliate has a separate and distinct group of employees with offices in different cities of Alabama, and as to which there is no apparent confusion in their relations tending to hide their separate identity or responsibility.

The evidence shows that defendant has not been doing business by agent in Jefferson County so as to be liable to suit in that county for a tort committed in Etowah County, unless the relations between defendant and the Alabama selling company were such as that the operations of the latter were truly either as agent of defendant, as contemplated by section 10471, Code, or they were so close in their legal status as that each was a part of the other, so as to make but one coordinated operation in Alabama, including the business conducted by each.

So that our problem is to analyze the facts in connection with the venue statute applicable to suits against domestic corporations as set out in section 10471, Code. We eliminate from consideration its application to foreign corporations, though there is no distinction in so far as the instant suit is concerned.

As here pertinent it is there provided that suits for personal injuries against domestic corporations must be brought either (1) in the county where the injury occurred (and this is regardless of whether it was doing business there by agent), or (2) in the county where plaintiff resides, if defendant does business by agent in such county, or (3) (by construction Atlantic Coast Line R. Co. v. Ballard, 202 Ala. 354, 80 So. 436) if it does not conduct business by agent in the county where plaintiff resides, the general authority to sue in any county where it does business by agent, as provided in the first clause of section 10471, Code, remains unimpaired.

We have had many cases in which the feature of the statute using the phrase "doing business by agent" was fully considered and well defined. Those cases do not shed light on our problem now presented. But it is controlled by different principles, which we will now undertake to name and apply.

 A corporation may be engaged in its business transactions through the agency of a subsidiary corporation as through any other agency. Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650; Wisconsin Coosa Co. v. State, 231 Ala. 543, 165 So. 838; Electric Bond & Share Co. v. Securities & Exchange Comm., 303 U.S. 419, (12), 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; Davis v. Alexander, 269 U.S. 114, 46 S.Ct. 34, 70 L.Ed. 186. But in 50 A.L.R. 611, the rule is stated as follows: "It may be stated as a general rule that the fact that a corporation owns the controlling stock of another does not destroy the identity of the latter as a distinct legal entity, and unless it is shown that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth or perpetrating fraud, or where the organization and control of the subsidiary are shown to be such that it is but an instrumentality or adjunct of the dominant corporation, no liability

**38**

may be imposed upon the latter for the torts of the subsidiary corporation." See, also, 1 Fletcher Cyc. of Corporations, section 45, page 63; New York Trust Co. v. Carpenter, 6 Cir., 250 F. 668, 676.

■ A corporate set up will be examined to determine whether it is but a fraudulent scheme to mislead the public away from the true source of accountability or to confuse them so as to be unable to place it upon responsible shoulders. Dixie Coal Min. & Mfg. Co. v. Williams, 221 Ala. 331, 128 So. 799; Christian & Craft Grocery Co. v. Fruitdale, 121 Ala. 340, 25 So. 566; Birmingham Realty Co. v. Crossett, 210 Ala. 650, 98 So. 895; Jefferson County Burial Society v. Cotton, 222 Ala. 578, 133 So. 256; Appelbaum v. First Nat. Bank, 235 Ala. 380, 179 So. 373; McLean v. Goodyear Tire & Rubber Co., 5 Cir., 85 F.2d 150.

This may be done also to establish identity between two affiliates created to evade the strictures of a statute, United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760; or to show that it is intended as a cloak or cover for fraud or illegality, 13 Am.Jur. 160, 161, section 7; or that it is a sham to be used as an instrument for concealing the truth, 13 Am.Jur. 1217, section 1383.

■ But each affiliate may have separate identity though both are wholly owned by a dominant corporation, as when the business of the latter justifies the creation of each to serve a separate and distinct function, as where each aspect of its business is of such proportion and character as that it may be conducted to better advantage by a separate corporation; and they each form an essential feature of a coordinated plan of operation, and have a separate corps of employees and managers, with separate facilities and arrangements, and there are no confusing relations to mislead the public and no other fraudulent or evasive result is thereby accomplished. They are not then identified as one. See Brown v. Standard Casket Mfg. Co., 234 Ala. 512, 175 So. 358; State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498.

■ We think that the only reasonable inference from the evidence in this case is that the separate identity of defendant and the selling company was justified, and that their affiliation is not used for any purpose denounced by the principles we have stated, nor to work injustice to the public.

■ There is here no relation of principal and agent between them apart from their affiliation as subsidiaries of the same dominant corporation serving separate functions.

■ On no reasonable theory supported by the evidence has defendant been doing business by agent in Jefferson County.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.