29 So.2d 298

**FOREST HILL CORPORATION v. LATTER & BLUM, Inc.**

I Div. 266.

Supreme Court of Alabama.

Feb. 13, 1947.

24

McCorvey, Turner & Rogers and C. A. L. Johnstone Jr., all of Mobile, for appellant.

Frank H. Inge, Richard H. Inge, and Armbrecht, Inge, Twitty & Jackson, all of Mobile, for appellee.

SIMPSON, Justice.

Forest Hill Corporation, an Alabama corporation, has appealed from a judgment rendered against it in the circuit court of Mobile County on a suit by appellee, a real estate brokerage firm of New Orleans, Louisiana, for a broker's commission claimed to be due as a result of the purchase of real estate in New Orleans pursuant to a contract between them whereby appellant employed appellee to locate for it suitable lands in New Orleans for the construction of a housing project. The appellee did locate the property, but due to circumstances hereafter related, the sale of the property to appellant was never consummated and a Louisiana corporation by the same name, having the same president, acquired the property.

Appellant contends that it was unable to consummate the purchase of the property, that the purchase by the Louisiana corporation was unrelated to the appellant or its contract with appellee and that the evidence to this effect was exclusive of adverse inference, entitling it to a favorable decision by the trial court.

The judgment against the appellant rested on the theory that appellee had fully performed its contract and that the Louisiana corporation after it was organized was merely the recipient of the fruits of appellant's contract and acquired title to the property either for convenience or because of certain local difficulties incident to transacting the contemplated business in Louisiana through the Alabama corporation. The appellee argues that the evidence afforded inferences sustaining such a theory warranting affirmance of the judgment.

We are, largely, remitted to an interpretation of the facts for the purpose of this review. No technical legal principles are involved and as to the cases submitted in briefs of counsel, none seem to furnish an accurate juridical yardstick by which the case may be gauged. There is, therefore,

no need to enter into an analysis of these authorities.

To determine the question thus presented it seems necessary to state the facts showing the connection between the two Forest Hill corporations and their several business associates and the events leading up to the final purchase of the property by the out-of-state Forest Hill Corporation. W. B. Nall in 1941, with the aid of a real estate broker in Mobile, one Rolston, organized the Alabama corporation for the purpose of acquiring real estate and constructing housing projects under FHA commitments in the vicinity of Mobile. He, as its president, and a first cousin, W. A. Smith, owned all but one share of stock, the one share being in the name of Rolston. Rolston was familiar with the character of business designed to be carried on by the corporation and located and acquired for it several pieces of property on which housing projects were eventually established under FHA commitments. Smith construction Company, of Nashville, Tennessee, a partnership composed of two brothers of W. A. Smith, also Nall's first cousins, were the contractors who built the first project. Later other projects were established by the corporation and the construction was accomplished by Oman-Smith Construction Company, a combination of Smith Construction Company and Oman Construction Company, the latter also of Nashville, and being a partnership composed of John Oman, Jr., and his two sons, Stirton Oman and John Oman, III. The consolidation of the two construction companies was for the purpose of erecting houses on FHA projects promoted by the Alabama corporation. The evidence indicates that Rolston was the person experienced in obtaining these FHA commitments and that he handled the details in this regard, including the acquisition of lands for the several projects undertaken by the corporation, for which services he received the customary broker's commissions from the corporation.

It may be said, here, that Nall, who later acquired all of the stock of appellant corporation, appears to have been acting so exclusively for the corporation in the transactions involved in this litigation as to have been practically its alter ego. In 1943 he decided to undertake a similar venture in New Orleans and, acting for the corporation, authorized Rolston to obtain suitable lands there for that purpose and to associate with him the appellee, Latter & Blum, Inc., a well-known real estate brokerage firm of that city to aid in this effort. Appellee assigned an experienced employee, one Polson, to the task and after considerable effort satisfactory property was located. Rolston and the New Orleans brokers were to receive their commission from appellant when the purchase should be consummated, but during the negotiations to purchase the property which had been located by them, Nall requested permission to deal directly with the owners of the property, with whom he and some of his said associates had influence, with the view of obtaining a reduction in the purchase price. The brokers were assured that they would be protected in their commission.

From then on Rolston and Polson relaxed their activity in directly inducing the sale of the property, but Polson continued aiding appellant in the effort to expedite FHA approval of the project, on which the sale depended. In his plan to deal directly with the property owners, Nall procured an option and several extensions, but due to the delay in FHA approval, the corporation's option finally expired and a few days thereafter John Oman, Jr., acting through his son, John Oman, III, purchased the property and in turn a few days later conveyed it to a new Forest Hill Corporation, organized in Louisiana, of which Nall was also president.

If the foregoing were a complete depicture of the facts, the argument of able counsel that no inference of liability for the commission could be thereby deducible might be sustainable on the theory of distinct corporate existence. This, because the mere fact that some or all of the stockholders or officials of two corporations are identical or because one corporation dominates the other does not, of itself, destroy the corporate identity or merge one into the other. Brown v. Standard Casket Mfg. Co., 234 Ala. 512, 175 So. 358; State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498; Pitts-

burgh & Buffalo Co. v. Duncan, 6 Cir., 232 F. 584; Ledlow v. Goodyear Tire & Rubber Co. of Alabama, 238 Ala. 35, 189 So. 78; Baker v. Bowie Lumber Co., 151 La. 598, 92 So. 129; Stephenson v. List Laundry & Dry Cleaners, 186 La. 11, 171 So. 556; Hollingsworth v. Georgia Fruit Growers, Inc., 185 Ga. 873, 196 S.E. 766, 768; Loewenthal v. White Paving Co., 351 Ill. 285, 184 N.E. 310; Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 289, 52 L.Ed. 481.

But the legal fiction of separate corporate entity should not be so extended "as to enable the corporation to become a vehicle to evade just reponsibility." Jefferson County Burial Soc. v. Cotton, 222 Ala. 578, 583(4), 133 So. 256, 259; Brown v. Standard Casket Mfg. Co., supra; State v. Pullman-Standard Car Mfg. Co., supra.

■ We think the last stated principle controls the result here to be considered. Due to their successful ventures in Alabama through the appellant, the Omans, Smiths and Nall were all interested in the New Orleans transaction and according to the testimony of several of appellant's witnesses, including its attorney, all had to be satisfied before the purchase could be accomplished and all, or their respective representatives, were most active in furthering the approval of the contemplated project by the FHA in order that the property could be purchased. But the predicate for such purchase was the sanction of this governmental authority to the end that the Whitney National Bank of New Orleans would advance the money for such purchase. And this purchase was not contemplated by anyone, including Oman, until such sanction came through. A part of the plan also contemplated the probability that title could not be taken in the Alabama corporation because it was not qualified to do business in Louisiana, but that it would perhaps be necessary to take title in another. In line with this idea, after the brokers agreed that Nall and his said associates should deal directly with the owner in purchasing the property, a letter was given by Nall at the request of Polson, as president of the Alabama corporation (with the approval of John Oman, III, who acted for his father in later purchasing the property, one of the Smiths also being present), agreeing to pay appellee a five per cent brokerage commission should the contract be assigned or transferred to any other who should become the purchaser.

Rather than the evidence being without conflict, as claimed by appellant, that the Alabama corporation "stepped out of the picture" after its option expired and the Louisiana corporation, as a totally unrelated corporate entity, became the purchaser of the property without reference to the Alabama corporation or its liability for the commission, our view is that this issue was a debatable one. The evidence furnished a strong inference that the appellant through its president, Nall, and his associates, the Omans and Smiths, never ceased but continued their efforts to acquire the property, the purchase of which had been afforded appellant through the skill and energies of appellant's employed brokers. Then, seven days after the option expired (while John Oman, Jr., was continuing negotiations to purchase the property and it seemed that the FHA commitments would come through pursuant to the appellant's original application) the Louisiana corporation was organized, the total capitalization being $11,000, with Nall owning $10,500, his brother $400, and his secretary $100. A few weeks after the organization of this corporation, Oman completed his negotiations to purchase the property, received a deed to it and in turn conveyed it to the (Louisiana) Forest Hill Corporation. Thus was the scheme of purchase fully accomplished as originally contemplated.

We regard the option taken by appellant as only an incident of the transaction. The appellee was not employed to procure an option, but to obtain suitable land for purchase for the desired project and its commission was not contingent upon the existence of any particular option. The whole matter turned on the FHA approval and, had the federal commitment come through before the expiration of the option, the bank would, doubtless, have furnished the money and if the necessities of the case should have warranted, it is reasonable to conclude the Alabama corporation would

have taken title. But, as indicated in the testimony of Nall, a new corporation in Louisiana was necessary in any event, clearly indicating to our mind that the purchase of Oman, which was likewise dependent upon the sanction of the project by the FHA, was in comprehension and continuation of the original plan promulgated by Nall through his Alabama corporation.

The argument is not convincing that the facts and circumstances developed by the evidence afforded no inference that Oman was not acting for appellant and Nall, as well as his other associates, in the first purchase of the property and in pursuance of the original purpose. A reading of the testimony could not induce the impartial mind to a conclusion that a close associate, as Oman, would, intended to, or did overreach any of his associates by acquiring the property other than for the common benefit and consonant with the original plan initiated by Nall in the name of and as president of appellant corporation, which apparently was controlled and operated by him. Nor can we regard it as of much consequence that Oman sold for a profit. It is but reasonable to infer that he would not deny Nall or appellant a share of this benefit any more than his other associates, all of whom seemed to be equally concerned in concluding the transaction. The Louisiana corporation paid the overage and the money came from another source as a result of FHA approval and it may be, as suggested by the trial court, that it might have been advantageous as evidencing a certain value of the property with respect to the new venture to route the title in the manner related.

Neither can it be said that it is without dispute that the letter appellant gave Polson guaranteeing the broker's commission expressed the complete obligation of the appellant. This would be placing too narrow a construction on the whole facts and circumstances surrounding this rather important matter. An opposing inference is that the letter was for the purpose of having a written record regarding the commission in the event the sale should be consummated by appellant or in the name of someone else pursuant to the original plan, after Nall had requested permission to deal directly with the property owner. In fact this is the import of Polson's testimony. Under this latter construction a recovery would likewise be permissible on the common counts. Lamar v. King, 168 Ala. 285, 291, 53 So. 279; Latter v. Schwarz, 223 Ala. 438, 137 So. 27; Schwarz v. Lou-Ala. Inv. Co., 23 Ala.App. 498, 127 So. 786.

Other facts also weigh heavily to support the claim of appellee. There was evidence that, after the conveyance to the Louisiana corporation, Nall acknowledged to Polson liability for the commission, and agreed to pay it when certain details could be worked out. There was also testimony, which is unnecessary to recount, that some other of the associates recognized the right of appellee to the commission. In fact, no one seemed to deny appellant's liability until several weeks subsequent to the deed to the Louisiana corporation.

It has been necessary to extend this summary of the pertinent facts in order to demonstrate our view of the untenableness of the position of appellant that the evidence afforded no inference justifying the conclusion that the plan of the Alabama corporation to acquire the New Orleans property had been effectuated, and the commission earned, even though title was taken (also according to the original plan) in its Louisiana namesake, of which its alter ego, Nall, was also president and owner of most of the stock.

■■ The notion of separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another, and in such circumstances the fiction may not be prosecuted to permit the corporation to evade its just responsibilities. The fiction was introduced into the law for certain well-known purposes, but it was not invented to promote injustice or justify wrongs and when so used it should be disregarded. The courts will not allow the corporate entity to successfully masquerade through its officers, stockholders, representatives or associates so as to defeat the payment of its just obligations. Jefferson County Burial Soc. v. Cotton, supra; Birmingham Realty Co. v. Crossett, 210 Ala. 650, 98 So. 895; Dixie

Coal Min. & Mfg. Co. v. Williams, 221 Ala. 331, 128 So. 799.

Actual fraud is not necessarily a predicate for discarding the theory. The courts will not apply the doctrine when to do so would extend the principle beyond its legitimate purposes and produce injustices or inequitable consequences. 13 Am.Jur. 160, § 7; 18 C.J.S., Corporations, § 6, p. 376; 14 C.J. 59, § 20.

As a corollary principle and determinative of the question before us, one, as the appellant, could not avoid its responsibility for its obligation to its brokers by the apparent manipulations of its president and his associates in routing the title through Oman to the Louisiana namesake.

The inference is impressive, to our minds, that the Louisiana corporation was merely the recipient of the title through the necessities or conveniences of the circumstances impelling and that associates Nall, Omans and Smiths separately and severally worked to this end. Certainly it cannot be said that the recorded evidence is free of such inference. The question, then, being fairly debatable and neither exclusively proved nor disproved, this court, under our settled rule, will not substitute its own judgment for that of the trier of facts at nisi prius, who heard the witnesses testify and who is charged with the primary duty and responsibility of determining the matter. Bookmiller v. Jones, 216 Ala. 298(2), 113 So. 32; Whitlow v. Moore, 246 Ala. 472(1), 21 So.2d 253.

Under these conditions, the decision there reached has the force and effect of a jury. Concededly the question was one not free of difficulty and though the conclusion of that court might be different from that of the reviewing court, there would still be no warrant to disturb the judgment. Birmingham Waterworks Co. v. Justice, 204 Ala. 547, 86 So. 389; Huckaba v. Hill, 209 Ala. 466, 96 So. 569; Southern R. Co. v. Smith, 221 Ala. 273, 128 So. 228; Winter & Loeb v. Judkins, 106 Ala. 259, 17 So. 627.

So considered, the judgment must be affirmed.

Affirmed.

All the Justices concur.