This is a statutory construction case. The issue is whether certain West Point Pepperell (Pepperell) reserve accounts, including deferred federal income tax, deferred employee compensation, and other long-term reserve accounts (hereinafter collectively referred to as reserve accounts), were properly determined by the Alabama Department of Revenue (state) to be within the definition of capital employed in the state and therefore subject to the state franchise tax on foreign corporations. *Page 580 
The levy on foreign corporations is codified under section40-14-41, Ala. Code 1975. Pepperell does business in Alabama but is incorporated in Georgia. Accordingly, it is a foreign corporation which is taxed under this statute. The franchise tax statute requires Pepperell to pay $3.00 on every $1,000.00 of the actual amount of capital that it employs in Alabama. Pertinent provisions of this statute are as follows:
 "(b) Definition of capital — The total capital of such foreign corporation shall be deemed to be an amount equal to the sum of the following:
". . . .
 "(2) Surplus and undivided profits, which shall include any amounts designated for the payment of dividends until such amounts are definitely and irrevocably placed to the credit of stockholders subject to withdrawal on demand;
 "(3) The amount of bonds, notes, debentures or other evidences of indebtedness maturing and payable more than one year after the first day of the franchise tax year. . . ."
Pepperell contends that the application of generally accepted accounting principles and a plain reading of the statute would not allow the reserve accounts to be defined as "capital" under the statute in question because they are all long-term liabilities and, as such, are not subject to the franchise tax.
The record reveals that Pepperell employs generally accepted accounting principles (GAAP) in the operation of its business. As a basic example, if Pepperell purchases a piece of equipment for use in its business, the straight-line method of depreciation would be used under GAAP to ascertain the proper depreciation deduction on this piece of equipment each year. Under this method, the total depreciable deduction is equally proportioned over the life of the asset. For instance, if this particular piece of equipment had a depreciable value of $100,000 and a useful life of 10 years, the depreciation deduction would be $10,000 per year; if the equipment had a useful life of 20 years, the deduction would be $5,000 per year, etc.
Federal tax laws, however, allow Pepperell to accelerate and expense the total depreciation deduction allowable over the life of the asset in the year that the equipment is purchased. Pepperell exercises this accelerated depreciation option, and in later years Pepperell's federal tax expense computed under the federal tax laws is greater than the federal income tax expense computed under GAAP (the straight-line method). It is this long-term liability for future federal income taxes that the deferred federal income tax liability account recognizes on Pepperell's financial statements.
The deferred compensation accounts under GAAP are long-term liabilities of Pepperell for compensation earned by its employees because they are not expected to be paid to such employees within one year. Pepperell's "other long-term reserves" are also classified as long-term liabilities under GAAP for pension and other employee benefits earned by the employees because they are also not expected to be paid to such employees within one year.
Even though the state does not dispute that the reserve accounts may be classified as long-term liabilities, it argues that the amount of money set aside by Pepperell for the payment of these long-term liabilities is taken from surplus and undivided profits and placed in reserve accounts only on Pepperell's balance sheet. It also argues that the money allocated for the reserve accounts is still being used by Pepperell in operating its business. Or, in the alternative, the state argues that these accounts are "other evidences of indebtedness" because they will be payable in more than one year after the first day of the franchise tax year.
The state concedes, however, that the money in the reserve accounts cannot be distributed as dividends and is not part of shareholder's equity. Even so, the state maintains that it should be allowed to add back this improper reduction in assets by including these accounts as part of capital and taxing them under § 40-14-41.
Pepperell filed a petition for writ of mandamus to prevent the state from erroneously assessing additional franchise taxes on these reserve accounts for the tax years 1985, 1986, *Page 581 
and 1987. The trial court, in interpreting this statute, held that the reserve accounts constituted "capital" in the form of surplus and undivided profits and "other evidences of indebtedness" and were properly included under subsections (b)(2) and (3) of § 40-14-41 in the measure of the corporate franchise tax. Pepperell appeals. We reverse and remand.
First, we note from the record that the state admits that Pepperell has properly followed the tax laws in its treatment of these reserve accounts. These accounts are liabilities of Pepperell by definition under the GAAP. Generally speaking, surplus and undivided profits refer to an excess in the value of all assets of a corporation over the sum of its liabilities.Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71,72 L.Ed. 247 (1927). To include these accounts as part of surplus and undivided profits is not required according to the plain language of the statute. The money is to be used in the future to pay government taxes or to distribute to employees as wages and benefits upon their retirement.
Moreover, including these reserve accounts as part of capital under the phrase "other evidences of indebtedness" in the statute is also inappropriate. The legislature did not intend for any and all accrued liabilities to be subject to the franchise tax under this statute, only those that are invested in corporate bonds, notes, debentures, and "other evidences of indebtedness" in this state. Black's Law Dictionary states, "[f]ollowing an enumeration of particular classes [i.e. bonds, notes, debentures] 'other' must be read as 'other such like,' and includes only others of like kind and character." Black'sLaw Dictionary, 992 (5th ed. 1979). Bonds, notes and debentures refer to written obligations, documents, or certificates. "Other" evidences of indebtedness must then include by definition a class of similar instruments. According to the plain language of the statute, "reserve accounts" set aside to pay a future liability are not of like character with this enumerated group of instruments.
Finally, the state relies heavily on its own regulation #810-2-3-.06 to justify its inclusion of these reserve accounts as capital under the franchise tax statute. The trial court gave great weight to this regulation, as evidenced in its order, which reads in pertinent part:
 "Department of Revenue Regulation 810-2-3-.06
states that deferred income taxes are includable in the total capital of the corporation. The court finds this regulation to be a valid exercise of the Department's authority to clarify and interpret the taxing statute which it is charged by law with administering . . . therefore, even if the deferred federal income taxes are viewed as long term liabilities or debts they are included within the definition of capital for franchise tax purposes under § 40-14-41(b)(3)."
First, there is nothing in the record to support the state's conclusion that this regulation applies to the franchise tax statute on foreign corporations. This regulation is cited in the record as pertaining to § 40-14-44 and § 40-14-70 of the Alabama Code. Both of these statutes pertain to domestic
corporations whose capital for franchise tax purposes is taxed differently than a foreign corporation's capital. In White v.Reynolds Metals Co., 558 So.2d 373 (Ala. 1989), our supreme court stated,
 " 'section 229 of the [Alabama] Constitution, in dealing with domestic corporations, expressly bases the franchise tax [on domestic corporations] on the "capital stock," while section 232 bases the franchise tax on foreign corporations on the "actual amount of capital employed in this state." ' "
Id. at 377 (quoting Ellis v. W.A. Handley Mfg. Co., 214 Ala. 539,540, 108 So. 343, 344 (1926)).
Additionally, it is well settled that the provisions of a statute will prevail in any case of conflict between the statute and an agency regulation. Ex parte State Dep't of HumanResources, 548 So.2d 176 (Ala. 1988). We have already determined that the plain language of the franchise tax statute would not include a deferred tax reserve as part of capital under surplus and undivided profits or other evidences of indebtedness; therefore, we find that the state's use of regulation810-2-3-.06 to aid in ascertaining what is *Page 582 
includable in a foreign corporation's capital for taxation purposes was not proper in this case.
When a court interprets a tax statute, and the language is reasonably capable of two constructions, the most favorable to the taxpayer must be adopted. Ex parte Zewen Marine Supply,Inc., 477 So.2d 417 (Ala. 1985). The state argues that the statute in question is reasonably capable of being construed to include these reserve accounts as part of Pepperell's capital. We have found that it is just as reasonable to conclude that a plain reading of the statute would not include these reserve accounts as part of capital that is subject to the franchise tax.
A taxpayer may resort to any legal method available to it in an effort to diminish the amount of its tax liability. State v.Pullman Standard Mfg. Co. 235 Ala. 493, 179 So. 541 (1938). The record reveals that Pepperell was required under GAAP to set up these reserve accounts in the exact manner in which they were established. The United States Supreme Court has stated that, "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." Gregory v.Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1934).
Because the statute in question does not require reserve accounts in the form of long-term liabilities to be included in the corporation's "capital" by any definition thereof, we hold that the accounts were improperly considered by the state in ascertaining Pepperell's franchise taxes in 1985, 1986 and 1987.
We reverse and remand this case with instructions for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.