MADDOX, Justice
(dissenting).
This Court granted the writ in this case to review a question of the right of the State to collect a foreign franchise tax. The specific legal question presented was whether reserve accounts of a foreign corporation set up for deferred federal income tax, deferred employee compensation, and deferred employee pension and benefits are included within the definition of “capital employed” in the state and are therefore subject to Alabama’s foreign corporation franchise tax. The majority, after review, decides to quash the writ as improvidently granted. I must disagree, and herein I state the reasons for my disagreement.
*583 Facts
West Point-Pepperell, Inc. (“Pepperell”), a Corporation organized under the laws of Georgia, is qualified to do business in Alabama pursuant to § 10-2A-220 et seq., Ala. Code 1975. Therefore, Pepperell is required to file annual returns and pay the Alabama Foreign Corporation Franchise Tax, pursuant to § 40-14-41, Ala.Code 1975. The franchise tax on foreign corporations is collected at the rate of $3 on each $1,000 of the actual amount of capital employed in Alabama.
This dispute over Pepperell’s tax liability began in 1988 when Pepperell filed an amended franchise tax return for the 1987 tax year, claiming that it was due a refund of $403,888 based on the correction of an alleged error regarding the inclusion in Peppe-rell’s franchise tax base of deferred federal income taxes, deferred compensation, long-term reserves, and treasury stock in the calculation of capital employed in Alabama. Thereafter, the State of Alabama Department of Revenue (“State”) audited Peppe-rell’s franchise tax returns for the years 1984 through 1987. During the course of this audit, Pepperell and the State agreed to certain adjustments, which reduced Pepperell’s claim for a refund from $403,888 to $328,833.
The State’s audit of Pepperell’s returns for 1984 through 1987 resuited in additional tax assessments being levied against Pepperell, and the State proposed offsetting the additional tax liability from the $328,833 refund due Pepperell. As a result of these additional assessments, the State asserted that Pepperell’s overpayment of its taxes for the years 1984 through 1987 was in the amount of only $112,105. The State credited that amount against Pepperell’s 1989 franchise tax liability.
Pepperell petitioned for a writ of mandamus pursuant to § 40-2-22, Ala.Code 1975, and sought to prevent the State from assessing additional franchise taxes for the years 1984 through 1987, and also sought to prevent the State from offsetting those assessments against the $328,833 refund allegedly due Pepperell. The circuit court issued an order, in which it held that the limitations period had expired for the 1984 tax year and also held that certain of Pepperell’s liability accounts could be taxed as capital employed within this state.
The trial court, in the order, permitted the State to offset certain assessments of the franchise taxes for the years 1985 through 1987 against a refund due Pepperell from the 1987 tax year.
Pepperell appealed and the Court of Civil Appeals reversed, finding that “the statute in question does not require reserve accounts in the form of long-term liabilities to be included in the corporation’s ‘capital’ by any definition thereof’ and that “the accounts were improperly considered by the state in ascertaining” Pepperell’s franchise taxes in 1985, 1986 and 1987. West Point Pepperell, Inc. v. State Department of Revenue, 624 So.2d 579 (Ala.Civ.App.1992). The State’s application for rehearing was overruled by the Court of Civil Appeals, and this Court granted the State’s petition for a writ of certiorari to review the issue whether the reserve accounts are subject to Alabama’s foreign corporation franchise tax.
Standard of Review
First, I note the fundamental rule of statutory construction that this Court has a duty to ascertain and effectuate the legislative intent expressed in the statute. The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained. Ex parte Holladay, 466 So.2d 956 (Ala.1985). In addition, it is a well-settled rule of statutory construction that a court has a duty to construe each word of each section consistently with other sections in pari materia. Director, State Department of Industrial Relations v. Winston County Commission, 468 So.2d 177 (Ala.Civ.App.1985). The entire statute should be considered, and not just an isolated part, so that every clause is given effect in light of the subject matter and the purpose of the law. Norandal USA, Inc. v. State Department of Revenue, 545 So.2d 792 (Ala.Civ.App.1989).
Of particular significance here is the rule of statutory construction that “[a]ny ambiguity in a taxing statute is to be resolved in favor of the taxpayer.” Ex parte Zewen Marine Supply, Inc., 477 So.2d 417, 419 (Ala. *584 1985), citing Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984); City of Birmingham v. Stacy Williams Co., 356 So.2d 608 (Ala.1978). Furthermore, courts often apply the legal maxim expressio unius est exclusio alterius (the expression of one thing is the exclusion of another) in interpreting statutes. Ex parte Kirkpatrick, 495 So.2d 1095 (Ala.1986).
The levy of the franchise tax on foreign corporations is codified in § 40-14-41, Ala. Code 1975. A foreign corporation is one organized under the laws of any other state and doing business in this state. Foreign corporations are required to pay to the state an annual franchise tax of $3.00 on each $1,000.00 of the actual amount of its capital employed in this state, § 40-14-41(a), Ala.Code 1975. The franchise tax is a tax upon the privilege of exercising corporate functions in Alabama, State v. Pullman-Standard Car Manufacturing Co., 235 Ala. 493, 179 So. 541 (1938), and is measured by the actual amount of a foreign corporation’s capital employed in Alabama, § 40-14-41(a), Ala.Code 1975; State v. P.R. Mallory, Inc., 273 Ala. 326, 138 So.2d 693 (1961).
The franchise tax statute sets out the procedure for determining the amount of capital employed in this state. First, the total amount of the capital employed in Alabama is calculated using the definition of “capital” from § 40-14-41(b), Ala.Code 1975:
“(b) Definition of capital. — The total capital of such foreign corporation shall be deemed to be an amount equal to the sum of the following:
“(1) The outstanding capital stock;
“(2) Surplus and undivided profits, which shall include any amounts designated for the payment of dividends until such amounts are definitely and irrevocably placed to the credit of stockholders subject to withdrawal on demand;
“(3) The amount of bonds, notes, debentures or other evidences of indebtedness maturing and payable more than one year after the first day of the franchise tax year;
“(4) The amount of the bonds, notes, debentures or other evidences of indebtedness maturing and payable at the time
to (i) any individual stockholder owning directly or indirectly 10 percent or more of the capital stock of such foreign corporation, or (ii) another corporation owning more than 50 percent of the capital stock of such corporation, or (iii) another corporation more than 50 percent of the capital stock of which is owned by such foreign corporation, and which other corporation referred to in (ii) or (iii) is not also required to pay a franchise tax to the state of Alabama;
“(5) The amount reasonably required to adjust the depreciable property accounts for any rapid, excessive or unreasonable depreciation charges or amortization, so as to restore the depreciable property accounts, for franchise tax purposes, to original cost less depreciation computed on the basis of the useful life of such property to the corporation.”
(Emphasis added.)
Section 40-14-41(c) provides:
“(c) Determination of capital employed in state. — The actual amount of such total capital as herein defined which is employed in this state shall be determined in accordance with generally accepted accounting principles appropriate in the particular ease, and such determination shall establish a rebuttable presumption as to the actual amount of capital employed by the corporation in this state....”
The central question is whether PepperelPs deferred income tax, deferred compensation, and other long-term reserve accounts are included in “capital,” as that term is defined in § 40-14-41. The Court of Civil Appeals held that they were not.
The State, when it applied for rehearing in the Court of Civil Appeals, asked that court, in accordance with the provisions of Rule 39(k), Ala.R.App.P. to include the following facts in its opinion:
“The amount of money set aside by West Point-Pepperell for the payment of these long term liabilities is taken from surplus and undivided profits and placed in reserve accounts only on Pepperell’s balance sheet. The money represented by these accounts is utilized by West Point in *585 operating its business. Although these monies are not used to pay the future taxes, etc., other monies will be used to pay them at some time in the future.”
(Emphasis added.)
In view of these facts, the State argues that, according to the provisions of § 40-14-41(b)(2), these reserve accounts are “surplus and undivided profits,” and are, therefore, capital employed in the State, and are included in the total capital computed for West Poinb-Pepperell. The State contends that the amounts set aside on Pepperell’s books for deferred tax have not become due and have not been paid by Pepperell. The State also contends that the fact that Pepperell has not even set aside any actual cash to pay the taxes in the future shows that Pepperell is actually engaging in an artificial reduction in its retained earnings or undivided profits accounts. The State further contends that the amount of money set aside by Pepperell for the payment of these long-term liabilities is taken from surplus and undivided profits and is placed in reserve accounts only on Peppe-rell’s balance sheet, and that the money represented by these accounts is actually used by Pepperell in operating its business.
Pepperell argues that the application of generally accepted accounting principles and a plain reading of the statute would not allow the reserve accounts to be defined as “capital” under the statute because they are all long-term liabilities, and, as such, are not subject to the franchise tax. I agree with the State’s argument, that these reserve accounts are includable as a part of the “capital employed” by Pepperell in the State.
Section 40-14-41(c), Ala.Code 1975, specifies the procedure for determining what falls within the meaning of capital employed in Alabama as follows:
“(c) Determination of capital employed in state. — The actual amount of such total capital as herein defined which is employed in this state shall be determined in accordance with generally accepted accounted principles appropriate in the particular case, and such determination shall establish a rebuttable presumption as to the actual amount of capital employed by the corporation in this state; provided, that in the ease of organizations whose accounts and records are kept according to rules prescribed by a regulatory agency or instrumentality of the United States or by the Alabama public service commission, or by a state insurance department, the actual amount of capital employed in this state as so determined shall in no event exceed the value of the sum of its tangible property located in this state and its intangible property employed in the conduct of its business in this state.”
The State contends that deferred income tax constitutes a part of Pepperell’s surplus and undivided profits or bonds, notes, debentures, or other evidences of indebtedness of Pepperell, and that the trial court was correct in holding:
“[Djeferred income tax is a set-aside on the balance sheet on earnings over and above the amount distributed to the Federal Government as taxes. Deferred taxes represent an amount of profits yet to be distributed. Therefore, deferred federal income taxes represent a portion of a corporation’s undivided profits. The same reasoning applies to deferred compensation and long term reserves.”
The trial court also held:
“A rule of statutory construction which the court must employ when resolving a tax matter is that the substance of a controverted transaction and not the form must prevail in determining the taxability of the transaction. Rust Engineering Co. v. State, 286 Ala. 589, 243 So.2d 695 (1971). In the present case the form in which the taxpayer has clothed this transaction is to show deferred federal income tax liability as an expense, even though payment of the expense is not due and the expense has not in fact been incurred. However, the substance of the transaction is that the taxpayer has allocated a portion of its surplus and undivided profits and called it a deferred income tax liability. Regardless of how the taxpayer shows the item on its balance sheet, in reality and substance this constitutes a part of its surplus and undivided profits. As such, it is a part of the measure of the franchise tax.”
I agree with the holding of the trial court that the reserve accounts were includable *586 within the definition of “capital employed in state”; therefore, I must disagree with the holding of the Court of Civil Appeals to the contrary and the refusal of this Court to reverse that holding. This Court stated in State v. Birmingham, Rail & Locomotive Co., 259 Ala. 443, 448, 66 So.2d 884, 887 (1953), “It is an established rule of statutory construction that when a tax statute has been construed by the highest officials charged with the duty of [administering] the tax -laws, such construction should be given favorable consideration by the courts.” In addition, the weight to be given an administrative interpretation is increased when the legislature, in re-enacting the law, fails to indicate in any way its disapproval of the settled administrative construction. Hamm v. Proctor, 281 Ala. 54, 198 So.2d 782 (1967).
The Department of Revenue had adopted Regulation 810-2-3.06, which provides that deferred income taxes are includable in the total capital of the corporation. The trial court found this regulation “to be a valid exercise of the Department’s authority to clarify and interpret the taxing statute which it is charged by law with administering.” I agree. The State argues that the Regulation “constitutes a reasonable interpretation of the statute and as such should be upheld by this Court.” Again, I agree.
Although it is true, as the Court of Civil Appeals notes, that “[a] taxpayer may resort to any legal method available to it in an effort to diminish the amount of its tax liability,” 624 So.2d at 582, citing State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541 (1938), I am convinced that the trial court correctly interpreted the statute, and, therefore, I believe that reserve accounts in the form of deferred federal income tax, deferred compensation, and long-term reserves constitute a part of Pepperell’s total “capital” employed within this state, as defined in the franchise tax statute. Based on the foregoing, I respectfully dissent from the order quashing the writ.
STEAGALL, J., concurs.