ROBERTSON, Presiding Judge.
Delaney’s, Inc., and Springdale Stores, Inc. (hereinafter “the Taxpayers”), appeal from a judgment of the Mobile County Circuit Court holding that 11 parcels of real property owned by the Taxpayers in the City of Mobile were not entitled to current-use tax status for tax years beginning on October 1, 1990. We reverse and remand.
This case has previously been before this court, and the Alabama Supreme Court has reviewed a mandamus petition arising out of the case. State v. Delaney’s, Inc., 668 So.2d 768 (Ala.Civ.App.1995) (“Delaney’s I”); Ex parte Roberts, 682 So.2d 44 (Ala.1996) (issuing writ of mandamus directing the trial court to vacate its order denying the state’s request for a jury trial). Much of the pertinent factual background and procedural history of the case was summarized in Delaney’s I:
“Alabama’s statutory scheme for the taxation of real property prescribes, as a general rule, that ad valorem taxes are based upon the fair and reasonable market value of the property. § 40-7-15, Ala.Code 1975. Beginning on October 1, 1978, the state legislature permitted an exception to the rule for property known as Class III property, which is defined as agricultural, forest, residential, or historic property. §§ 40-7-25.1 and 40-8-1, Ala.Code 1975. Upon application by the property owner, Class III property may be assessed for ad valorem tax purposes at its current use value rather than its fair market value. Id. The assessed value of property eligible for current use treatment is based upon the use being made of the property on October 1 of any taxable year. Id.
“The Taxpayers are related corporations that together own the 11 parcels of real property at issue in this case. The property is located in Mobile County near the intersection of Interstate Highway 65 and Airport Boulevard. At various times during the tax years 1985 through 1989, the Taxpayers filed applications for current use valuation on these 11 parcels of property with the Mobile County tax assessor, all of which were granted. According to the Taxpayers, the property was being used as timberland. On April 1, 1989, Freda Roberts assumed the duties of the newly created office of revenue commissioner of Mobile County. The revenue commissioner’s office undertook a review of the property in Mobile County that was being taxed on the basis of current use valuation. The parcels owned by the Taxpayers were included in the property reviewed. After requesting information from the Taxpayers and having the property inspected and appraised, the revenue commissioner determined that *99 none of the 11 parcels of property at issue here was being used ‘for the growing and sale of timber and forest products.’ § 40 — 8—1 (b)(1), Ala.Code 1975. See also § 40-7-25.1. The revenue commissioner revoked the current use assessment, reclassified the property as Class II property, i.e., property not otherwise classified, and assessed ad valo-rem taxes based on fair market value. In tax year 1990, the total ad valorem tax bill for all 11 parcels, assessed as Class III property and based on current use value, was $147.29. In tax year 1991, the total ad valorem tax bill for all II parcels, assessed as Class II property and based on fair market value, was $134,278.01.
“The Taxpayers appealed the revised assessments to the Mobile County Board of Equalization, arguing that the property should have retained its Class III status so that it could continue to enjoy current use valuation. . The Board ruled that it did not have the authority to review the denial of'current use valuation to the Taxpayers. The Taxpayers then filed in the Mobile Circuit Court an action for a declaratory judgment against the Taxing Authorities [i.e., the State of Alabama, the revenue commissioner of Mobile County, and the Mobile County Board of Equalization]. The Taxpayers asked the court to declare that the Board had the authority to review the reclassification of their property or, in the alternative, to decide the dispute between the parties by declaring that the reclassification of their property was improper. While the declaratory judgment action was pending, the Board rendered 11 decisions on July 25, 1991, fixing the final value for assessment on each of the 11 parcels for the tax year 1991 on the basis of fair market value. Delaney’s and Springdale Stores each appealed the Board’s decisions to the Mobile Circuit Court.pursuant to § 40-3-25, Ala.Code 1975. The three actions were then consolidated![1]
“The Taxpayers filed a motion for summary judgment, which was opposed by the Taxing Authorities. After discovery, extensive briefing, and oral argument, the trial court entered a summary judgment in favor of the Taxpayers. The trial court held that the tax assessor’s initial grant of the Taxpayers’ applications for current use valuation was ‘res judicata as to the question of whether the use to which this property is being put qualifies for current use status,’ and declared the ad valorem tax assessments for the tax year 1991 to be void and illegal. The trial court then directed the revenue commissioner to reissue assessments for the. 11 parcels, with corresponding tax bills, in which the property was assessed as Class III property based upon current use valuation. The Taxing Authorities appealed to the Su.preme Court of Alabama; however, that court transferred the case to this court on jurisdictional grounds.”
668 So.2d at 769-70 (footnotes omitted). This court reversed the, summary judgment and remanded the cause for further proceedings, concluding (1) that the doctrine of res judicata did not apply to the Taxing Authorities’ determinations, made during previous tax years, concerning whether the Taxpayers’ parcels were entitled to current use treatment; and (2) that a genuine issue of fact concerning whether the use- of ■ the Taxpayers’ parcels had *100 changed after the 1989 tax year precluded the entry of a summary judgment in their favor. Delaney’s I, 668 So.2d at 774-75.
After the Supreme Court directed the trial court to vacate its order denying the State’s request for a jury trial, the case went to trial. The trial court denied the motions for a judgment as a matter of law (“JML”) filed by the State and by the Taxpayers. The jury returned a verdict in favor of the State on the issue whether the Taxpayers’ parcels were used for the growing and sale of timber and forest products, and the trial court entered a judgment directing the Taxpayers to pay additional taxes in the amount of $134,278.01. The Taxpayers’ subsequent motion for a new trial, as well as their renewed JML motion, were denied.
The principal contention made by the Taxpayers is that during the trial the State did not adduce substantial evidence indicating that the parcels were being used for purposes other than the growth and sale of timber and forest products. If their contention is correct, then the trial court erred in denying the Taxpayers’ pre-verdict and post-verdict JML motions. We review the trial court’s determination with respect to these motions under the following standard:
“ ‘The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now, pre-verdict and post-verdict motions for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court’s ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.’ ”
Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998) (quoting Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988)). In other words, we must determine whether the State produced substantial evidence in support of its claim that the parcels of property at issue were not being used for the growing and sale of forest products at those times relevant to the tax status of the parcels during each of the years in question (i.e., 1991-94 and 1996-97).[2] In determining this issue, we must review the legal landscape surrounding the Legislature’s decision to tax different classes of property at different rates.

I. Current-use taxation

Except as otherwise provided by law, real property in Alabama is to be appraised at its fair and reasonable market value, taking into consideration all elements or factors bearing upon such value. Section 40-7-15, Ala.Code 1975. However, § 40-7-25.1, Ala.Code 1975, constitutes an exception to this general rule. It provides that ad-valorem-taxing authorities must base their appraisals of agricultural and forest property “on its current use on October 1 in any taxable year and not on its fair and reasonable market value.” Under that section, “current use value” is the value of eligible taxable property based upon the use being made of the property on October 1 of any taxable year, and “no consideration shall be taken of the prospective value such property might have if it were put to some other possible use.” Section 40-7-25.1, Ala.Code 1975 (emphasis added). This exception to fair-market-value taxation is termed “current-use” taxation.
*101 ' As the Alabama Supreme Court noted in Eagerton v. Williams, 433 So.2d 436 (Ala.1983), the concept of “current-use” taxation of real property was a product of, among other things, a federal-court judgment invalidating Alabama’s former ad-valorem-tax laws- on constitutional grounds. 433 So.2d at 438 (citing Weissinger v. Boswell, 330 F.Supp. 615 (M.D.Ala.1971)). The Weissinger court ordered that all real property in Alabama be reappraised, and the Legislature enacted enabling legislation to carry out the mandate of the federal court. See §§ 40-7-60 et seq., Ala.Code 1975. The aftermath of the reappraisals ordered by the Weissinger court was summarized in Eagerton:
“State-wide, the reappraisals ordered by the Weissinger court took considerably longer to complete than the one year contemplated by the federal court. It became clear that many Alabama landowners’ property taxes' would increase significantly. In 1978, the Governor called the legislature into special session to avert the substantial increases in ad valorem taxes imminent under the new appraisals.
“Included in the governor’s tax relief package was a proposed amendment to Section 217 of the Constitution of Alabama of 1901. It passed the legislature, was ratified by the people, and is now Amendment No. 373 to the Constitution of 1901. In pertinent part, it reads:
“ ‘(a) On and after October 1, 1978, all taxable property within this state, not exempt by law, shall be divided into the following classes for the purposes of ad valorem taxation:
“ ‘Class I. All property of utilities used in the business of such utilities.
“‘Class II. All property not otherwise classified.
“ ‘Class III. All agricultural, forest and single-family owner-occwpied residential property, and historic buildings and sites.
“ ‘Class IV. All private passenger automobiles and motor trucks of the type commonly known as “pickups” or “pickup trucks” owned and operated by an individual for personal or private use and not for hire, rent or compensation.
“ ‘(b) With respect to ad valorem taxes levied by the state, all taxable property shall be forever taxed at the same rate. ( On and after October 1, 1978, such property shall be assessed for ad valorem tax purposes according to the classes thereof as herein defined at the following ratios of assessed value to the fair and reasonable market value (except as otherwise provided in subsection (j) hereof) of such property:
“ ‘Class I. 30 per centum.
“ ‘Class II. 20 per centum.
“ ‘Class III. 10 per centum.
“ ‘Class IV. 15 per centum.
[[Image here]]
“‘(j) Notwithstanding any other provision of this section, on and after October 1, 1978, taxable property defined in subsection (a) hereof as Class III property shall, upon application by the oumer of such property, be assessed at the ratio of assessed value to the current use value of such taxable property and not the fair and ■ reasonable market value of such property. The legislature may enact laws uniformly applicable to the state and all counties, municipalities and other taxing authorities establishing criteria and procedures for the determination of the current use value of any eligible taxable property and procedures for qualifying such property for assess- *102 merit at its current use value.... ’ (Emphasis added.)
“To implement this constitutional amendment, the legislature passed Act No. 135 in the above-mentioned special session. Act No. 135, set out in pertinent part below, provided for the appraisal of Class III property at current use value upon application by the property owner:
“ ‘Section 4. Current use value. For ad valorem tax years beginning on and after October 1, 1978, with respect to taxable property defined ... as Class III property and upon request by the owner of such property as hereinafter provided, the assessor shall base his appraisal of the value of such property on its current use on October 1 in any taxable year and not on its fair and reasonable market value. As used in this Act, “current use value” shall be deemed to be the value of eligible taxable property based on the use being made of that property on October 1 of any taxable year; provided, that no consideration shall be taken of the prospective value such property might have if it were put to some other possible use.’ ”
433 So.2d at 439 (footnotes omitted). Act Number 135 of the Second Extraordinary Session of the 1978 Legislature, as amended, has since been codified at §§ 40-7-25.1, Ala.Code 1975. Eagerton, 433 So.2d at 438 n. 1.
Alabama’s adoption of a current-use-taxation statute followed the enactment of similar statutes in various other states that had begun to feel the effects of rapid urban and suburban growth during the 1950s and 1960s. Current-use-taxation statutes such as § 40-7-25.1 encourage the preservation of noncommercial real property by insuring against the conversion of such land to more intensive uses as a result of higher property-tax assessments. Rustici v. Town of Stonington, 174 Conn. 10, 13, 381 A.2d 532, 534 (1977). By enacting § 40-7-25.1, the legislature addressed what one court has labeled the “self-fulfilling prophecy” of fair-market-value taxation with respect to agricultural land unfortunate enough to be located near an expanding city:
“[T]axing land on the basis of its market value compels the owner to put the land to the use for which it is valued by the market. As the urban fringe approaches, the farmer’s [or timberland owner’s] land becomes valuable for residential development. His taxes are therefore increased, although his income is likely to shrink as more costly practices must be undertaken both to avoid interfering with his new neighbors and to protect his crops, livestock, and equipment from their intrusion. Often the farmer is forced to sell his land to subdivision developers, sometimes long before development is appropriate. As houses [or shopping malls] go up, so does the value of the remaining agricultural land, and the cycle begins anew.”
Sierra Club v. Hayward, 28 Cal.3d 840, 850, 623 P.2d 180, 184, 171 Cal.Rptr. 619, 623-24 (1981) (citations omitted). This purpose was specifically recognized by the United States Court of Appeals for the Eleventh Circuit as a rational basis for the disparities that may, from time to time, arise from current-use-taxation statutes:
“Alabama justifies its disparate tax treatment of half of the four types of Class III property [by] asserting] a special interest in preserving farm and timberland.
“The district court recognized that ‘Alabama is particularly concerned about the preservation of its agricultural and forest property and seeks through its property tax structure to preserve such *103 property by providing additional preferential tax treatment for such property.’
... The state is free to enact measures that attempt to perpetuate certain desirable uses of its land in the face of economic pressures to convert the property to other more lucrative pursuits. Institution of a favorable tax system is one rationally related means by which to effect that end. A formula for the evaluation of farm and timber property that routinely holds assessment values below the normal selling price will certainly encourage the continued use of land for its present purpose. Therefore, in view of Alabama’s legitimate goal to preserve land for agriculture and forestry, we conclude that any disparity in the valuation of two of the types of Class III property is rationally related to the achievement of a permissible state purpose.”
Weissinger v. White, 733 F.2d 802, 806-07 (11th Cir.1984) (footnote omitted). With these principles in mind, we turn to the question whether the trial court correctly denied the Taxpayers’ JML motions.

II. Were the Taxpayers’ parcels “Class III” property?

As stated above, § 40-7-25.1 provides that Class III property is to be taxed based upon its current-use value and not its fair market value “upon request by the owner of such property.” Thus, in order to conclude that the 11 parcels of property at issue are, as the Taxpayers contend, subject to current-use taxation, we must first determine whether the parcels are in fact Class III property.
Under Alabama law, Class III property includes “[a]ll agricultural, forest and single-family owner-occupied residential property, and historic buildings and sites.” Ala. Const, of 1901, amend. 373, subsec. (a); see also § 40-8-l(a), Ala.Code 1975. “Forest property” is defined as real property used for “the growing and sale of timber and forest products” or any other “horticultural use.” Section 40-8-l(b)(l), Ala.Code 1975; see also § 40-7-25.1(b) (defining “forest” property as “real property used for the growing and sale of timber and forest products”).
The 11 parcels of property at issue are not occupied by buildings, although they are located close to a large interstate highway (thus giving rise to the commonly used name for the property, the “Interstate Block”). The Taxpayers presented evidence indicating that the Interstate Block was being, used for growing stands of pine, oak, and popcorn trees, averaging 20 to 25 years of age, that are not yet merchantable or ready to be harvested, and that nothing else was located on .the property other than a few billboard advertisements. In addition, portions of the Interstate Block had been planted with pine seedlings in 1983 and again in 1992. Moreover, the chief appraiser of the revenue commissioner’s office admitted that no commercial development had occurred on the property during the preceding 40 years, and the State’s forester testified that the Interstate Block was being managed in a manner consistent with good forest management practices.
In contrast, the State did not present substantial evidence indicating that in 1991, the first relevant tax year, the prop-érty was not being used for the growing and sale of timber products — the revenue commissioner herself admitted that the property looked “like a thicket” of trees and stated that the incidental use of the property to display billboards should not affect the tax classification of the property. Moreover, the 11 parcels had been granted current-use tax status for the years 1985 through 1989, and no evidence was presented at trial to indicate that the use of *104 the property had changed during the succeeding years. Finally, while there was conflicting evidence concerning the ultimate marketability of the timber on the Interstate Block, the revenue commissioner admitted that nonproductive land would not necessarily be disqualified from current-use treatment.[3] In light of these facts, the sole conclusion that can be drawn is that the property in question was Class III forest property in 1991 and was eligible for current-use taxation.

III. “Current use”

Because the property at issue was Class III property, the ad valorem tax on the land is to be calculated with reference to “its current use on October 1 in any taxable year and not ... its fair and reasonable market value.” This provision affords a window wherein the State may reevaluate a parcel’s tax status in light of a change in the use of the parcel that occurs on or before October 1 of each year. In other words, if ■ a Class III parcel has qualified for current-use taxation in one tax year (e.g., fiscal year 1999, which extends from October 1, 1998, to September 30, 1999), but is subsequently used, on or before October 1, 1999, in a manner inconsistent with its Class III status, the state may determine that the current use of the property is not within the parameters of Class III property and may tax the parcel according to the general rule, i.e., based upon its fair and reasonable market value. As we said in Delaney’s I, “Common sense dictates that tax assessors must have the ability to correct any errors that exist in the assessment process, including the ability to revoke current use valuation if the use of the property no longer conforms to the appropriate criteria for allowing current use valuation.” 668 So.2d at 774.
However, while we recognize that the State has the power to correct prospectively its determination during the immediately preceding year that the property is entitled to current-use treatment, the basis of that correction must, pursuant to § 40-7-25.1(a), arise from a nonconforming use of the property that occurs on or before October 1 of that year. This requirement follows logically from the Legislature’s mandate that when an application for current-use treatment has been granted by a tax assessor or a revenue commissioner, the owner of the property shall not be required to reapply for current-use treatment in subsequent years. See § 40-7-25.2(e), Ala.Code 1975. Thus, to warrant a change in the next year’s ad valo-rem taxation of a parcel that has been granted current-use treatment during a particular year, §§ 40-7-25.1(a) and 40-7-25.2(e), when read together, require that “the use being made of that property on October 1 of any taxable year” be different from the use for which current-use treatment has been granted with respect to the preceding year.
The evidence at trial was undisputed that the property has remained unoccupied and forested since 1991 and that no change in the use of the property has occurred since October 1, 1990. While the State adduced evidence indicating that, in previous tax years, the property had occasionally been used to store parked automobiles, that the property had been platted, and that streets, gutters, and utilities had been installed on the property, it was undisputed that these uses, to the extent that they were inconsistent with the Taxpayer’s Class III uses of the land, had all occurred before 1990. Thus, while the State undis- *105 putably possessed the statutory power to redetermine the “current use” of the 11 parcels in the Interstate Block each October 1, there is no evidence that would permit the conclusion that the Taxpayers’ use of the property at issue actually had changed over the course of the pertinent tax years (i.e., 1991-94 and 1996-97). Therefore, the “current use” of the Interstate Block at all pertinent times was “for the growing and sale of timber and forest products,” and the revenue commissioner’s attempt to tax the parcels based upon their fair and reasonable market value was improper.

Conclusion

While we recognize that “current-use” taxation has its critics {e.g., Comment, Alabama’s Property Tax, 36 Ala. L.Rev. 147 (1984)), we are also committed to the proposition that “a taxpayer may resort to any legal method available to it in an effort to diminish the amount of its tax liability.” West Point Pepperell, Inc. v. State Dep’t of Revenue, 624 So.2d 579, 582 (Ala.Civ.App.1992), cert. quashed, 624 So.2d 582 (Ala.1993). Unless and until the statutes governing taxation based upon the current use of Class III property are altered by the elected legislature of this state so as to require fair-market-value treatment of such property, both the taxing authorities and the courts of this state are bound to apply them as they are written. Based on the facts in this case, imposing fair-market-value taxation upon the parcels at issue is a prime example of forced commercialization by taxation, the very evil that § 40-7-25.1 was designed to prevent.
The trial court erred in denying a judgment as a matter of law in favor of the Taxpayers. Its judgment is therefore reversed, and on remand the trial court is instructed to enter a judgment directing the revenue commissioner to afford the Interstate Block current-use treatment with respect to the ad valorem taxes due for the years 1991-94 and 1996-97, and to recalculate those taxes pursuant to subsections (c) and (d) of § 40-7-25.1, Ala.Code 1975.
REVERSED . AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ„ concur.

. In addition to the appeals concerning the 1991 tax year, the Taxpayers filed appeals contesting the Taxing Authorities' subsequent denial of current-use tax status for the 11 parcels in 1992, 1993, 1994, 1996, and 1997.

. The Taxpayers did not file applications for current-use treatment of the parcels for 1995, although their 1994 applications were denied; thus, the parcels do not qualify for current-use treatment for that year. See §§ 40-7-25.1(a) and 40-7-25.2, Ala.Code 1975.

. See also § 40-7-25.1(c), Ala.Code 1975 (outlining schedule of soil groups to be used in calculating productivity ratings of forest property, which include a soil group for "nonproductive” forest property).