HOUSTON, Justice.[1]
This case comes to this Court not as a stranger. See State v. Delaney’s, Inc., 668 So.2d 768 (Ala.Civ.App.1995), and Ex parte Roberts, 682 So.2d 44 (Ala.1996). It involves sections (a) and (j) of Amendment No. 373 of the Constitution of Alabama of 1901 (“the Amendment”), and Ala.Code 1975, § 40-8-1 et seq. More specifically, it involves whether the owner of certain real property is entitled to have it assessed for ad valorem taxes at the value of the property at its current use and not at its fair and reasonable market value.
In 1953, E.E. Delaney, now deceased, acquired 357 acres for development in Mobile County. Over the years, Mr. Delaney developed much of this property into Yes-ter Oaks Townhouses, Yester Oaks Shopping Center, Springdale Plaza, Springdale Mall, and Windsor Apartments. A right-of-way for Interstate Highway 65 was acquired across this property intersecting Grant Street, now Airport Boulevard. The remainder of this 357 acres is now owned by Delaney’s Inc., and Springdale Stores, Inc. (“Delaney’s”), with the principals of these corporations being the children of Mr. Delaney: William Delaney, James Delaney, and Darlene Delaney Frost. Before 1984, Delaney’s platted the property and constructed, on part of the property, paved roads with concrete curbing, an underground storm-drainage system, a sewer system, water lines, utility lines, and fire hydrants. The timber was not harvested from the land before the roads were cut. Delaney’s contends that before October 1, 1985, it changed the use of this property from property held for development to forest property.
In the tax years 1986 through 1990, Delaney’s filed applications with the Mobile County tax assessor to have the property assessed for the “current-use” valuation as forest property. The application was granted. In 1986, a parcel of this property in the southwest quadrant of the intersection of 1-65 and Airport Boulevard came out of the forest classification and was developed for construction of a Hampton Inn motel. In the tax year 1987, a portion of the northwest quadrant of that intersection was removed from the forest classification, to be developed into a parking lot for a neighboring McRae’s department store. In the tax year 1988, a portion of the southwest quadrant of the intersection was removed from the forest classification to be used for the expansion of Windsor Apartments. As of the tax year 1991 (beginning October 1, 1990), the 357 acres had been reduced to approximately 100 acres located in the four quadrants of the intersection of 1-65 and Airport Boulevard (that area will be referred to as the “Interstate Block”).
On October 1, 1990 (which began the tax year 1991), the Mobile County revenue commissioner (hereinafter referred to as the “Commissioner”), on behalf of the State of Alabama and Mobile County, revoked the current-use treatment for the Interstate Block. Delaney’s appealed the Commissioner’s ruling to the Mobile County Board of Equalization (the “Board”), which denied the appeal.
Delaney’s then filed a declaratory-judgment action in the Mobile County Circuit *108 Court and filed appeals from the ruling of the Board. The trial court consolidated these actions for trial. Delaney’s moved for a summary judgment; the court granted the motion and entered a summary judgment for Delaney’s.
The State appealed to this Court, and this Court transferred the appeal to the Court of Civil Appeals, on jurisdictional grounds. The Court of Civil Appeals reversed the summary judgment and remanded the cause “for further proceedings to determine whether the revenue commissioner’s decision to revoke the Taxpayers’ current use valuation was correct.” State v. Delaney’s, Inc., 668 So.2d 768, 775 (Ala.Civ.App.1995) (“Delaney I”). This Court denied certiorari review.
On remand, Delaney’s filed a motion to strike the State’s jury demand, and the trial court granted that motion. The State petitioned this Court for a writ of mandamus; this Court issued the writ, holding that the trial court had erred by striking the State’s jury demand. Ex parte Roberts, 682 So.2d 44 (Ala.1996).
Delaney’s moved for a judgment as a matter of law, at the conclusion of all of the evidence. The court denied the motion and propounded the following special interrogatory to the jury: “For tax year 1991, was the property at issue [“Interstate Block”] used for the growing and sale of timber and forest products?” Delaney’s objected to this interrogatory, as follows:
“I would object to it in that form on the basis that the law says they must make that decision as of October 1st of each year. The interrogatory should more correctly state for the tax year— should properly say was the property at issue used for growing and sale of timber and forest products on October 1st, 1990 paren [sic] for the 1991 tax year.”
(R. 760.) The court overruled the objection.
The jury answered the interrogatory “no” and found in favor of the State and against Delaney’s. After the trial court had denied its motions for a new trial and for a judgment as a matter of law, Delaney’s appealed to the Court of Civil Appeals. That court reversed the judgment of the trial court, holding that the trial court had erred in denying Delaney’s a judgment as a matter of law. It remanded the cause for the trial court “to enter a judgment directing the ... commissioner to afford the Interstate Block current-use treatment with respect to the ad valorem taxes due for the years 1991-94 and 1996-97, and to recalculate those taxes pursuant to subsections (c) and (d) of § 40-7-25.1, Ala.Code 1975.” Delaney’s, Inc. v. State, 834 So.2d 97, 105 (Ala.Civ.App.1999). We granted the State’s petition for certiorari review, and we heard oral arguments on June 28, 2000. We reverse and remand.
It is undisputed that the Interstate Block was acquired and held for commercial development for some time. This was not property that became surrounded by urban growth while being used as a farm or as a forest. It was part of a parcel that had been purchased in anticipation of urban growth. Had the use of the Interstate Block changed from commercial use, awaiting a purchaser or a commercial venture, to forest property, on October 1, 1990, as Delaney’s contends? This was a factual question for the jury to resolve. The Court of Civil Appeals held that the State did not present substantial evidence indicating that in 1991, the first relevant tax year, the property was not being used for the growing and sale of timber. We disagree. We reverse and remand for the Court of Civil Appeals to address the remaining issues, including the issue wheth *109 er the -trial court erred in presenting the special interrogatory to the jury.
If on remand the Court of Civil Appeals again reverses the judgment of the trial court and remands the case for a new trial, we note that the right to have “forest property” assessed for ad valorem taxes on the current-use basis is a constitutional right. Amendment No. 373(b) and (j) of the Constitution of Alabama of 1901. Subsection (b) in pertinent part provides:
“[A]ll ... [forest] property shall be assessed for ad valorem tax purposes [at the ratio of 10 per centum] of assessed value to the fair and reasonable market value (except as otherwise provided in subsection (j) hereof) of such property. ...”
Subsection (j) provides in pertinent part:
“Notwithstanding any other provision of [Amendment No. 373], taxable property defined [as all forest property] shall, upon application by the owner of such property, be assessed at the ratio of assessed value to the current use value of such taxable property and not the fair and reasonable market value of such property.”
It is undisputed that Delaney’s applied for current-use valuation. “Forest” is not defined in Amendment No. 373. It is defined as “[a] dense growth of trees, together with other plants, covering a large area,” in The American Heritage Dictionary of the English Language 514 (1969); and as “[a] tract of land covered with trees and one usually of considerable extent.” Black’s Law Dictionary 649 (6th ed.1990).[2]
Subsection (j) of Amendment No. 373 provides:
“The legislature may enact laws ... establishing criteria and procedures for the determination of the current use val■ue of any eligible taxable property and procedures for qualifying such property for assessment at its current use value.”
(Emphasis added.) Does this empower the Legislature to limit the constitutional designation of “forest property”? That issue was not before the trial court or the Court of Civil Appeals. Section 35 of the Constitution restricts the legislative, executive, and judicial departments of government, as follows:
“[T]he sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when the government assumes other functions it is usurpation and oppression.”
(Emphasis added.)
“[T]axable property defined [as forest property] shall, upon application by the owner of such property, be assessed at the ratio of assessed value to the current use value of such taxable property and not the fair and reasonable market value of such property.”
Amendment 373(j). (Emphasis added.)
For the purposes of defining the terms, the Legislature combined the terms “agricultural” and “forest,” and defined “agricultural and forest property” as:
“All real property used for raising, harvesting, and selling crops or for the feeding, breeding, management, raising, sale of, or the production of livestock, including beef cattle, sheep, swine, horses, ponies, mules, poultry, fur bearing animals, honeybees, and fish, or for dairying and the sale of dairy products, or for the growing and sale of timber and forest products, or any other agricultur *110 al or horticultural use or animal husbandry and any combination thereof.”
(Emphasis added.)
In Delaney I, Retired Justice Beatty wrote for a unanimous Court of Civil Appeals:
“Common sense dictates that tax assessors [revenue commissioners] must have the ability to correct any errors that exist in the assessment process, including the ability to revoke current use valuation if the use of the property no longer conforms to the appropriate criteria for allowing current use valuation. Nonconforming use could result from a change in the use of the property by the owner after the initial application for current use valuation has been granted. Nonconforming use could also, in some cases, result from an erroneous or improper grant of current use valuation in the first instance. This Court will not sanction an interpretation of the law that allows a taxpayer to continue to enjoy a tax benefit at the expense of the other taxpayers of the state [1] if the taxpayer no longer qualifies for the benefit or [2] if the benefit was erroneously or improperly granted.”
668 So.2d at 774-75.
We agree with Retired Justice Beatty’s reasoning. Therefore, on remand, the State can present evidence to show a change in the use of the subject property (but not to show a change in the use of the property surrounding the subject property) and/or to show the use of the property before and at the time the benefit of current-use assessment was granted, to show that the benefit was erroneously or improperly granted (but not to show a change in the use of the property surrounding the subject property). If the subject property is being used on tax day (October 1 of every year) as agricultural property or forest property (and this can be proved by proof of the prior use of such property), it makes no difference whether the property is surrounded by other agricultural or forest property or by a megalopolis. The owner, if it properly applies for current-use valuation, is constitutionally entitled to have its property assessed at a value determined by its present use as agricultural or forest property.
For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed and the case is remanded with instructions.
REVERSED AND REMANDED. 
HOOPER, C.J., and MADDOX, COOK, and ENGLAND, JJ., concur.
SEE, BROWN, and JOHNSTONE, JJ., dissent.
LYONS, J., recuses himself.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Houston on July 18, 2000.

. In Black's Law Dictionary 660 (7th ed.1999), only the historical definition is given: “A tract of land, not necessarily wooded, reserved to the king or a grantee, for hunting deer and other game.”